E-FILED
Friday, 10 October, 2025   11:33:37 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| THOMAS ATCHISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2023-cv-3190-MMM |
| | ) | |
| ANDREW SCROGGIN, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' RULE 56 MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW</u>**

September 12, 2025

Bhairav Radia, #6293600
Kyle Moore, #6346862
Hoseuk Kim, #6349370
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
Phone: 847-291-0200
Email: bradia@ifmklaw.com
        kmoore@ifmklaw.com
        akim@ifmklaw.com

*Attorneys for Defendants Andrew
Scroggin and Misty Vaughn*

# TABLE OF CONTENTS

Introduction ........................................................................................................3

Undisputed Material Facts ...................................................................................3

Legal Standard ...................................................................................................8

Argument ...........................................................................................................9

    I.     Atchison's failure to protect claim against Jail Administrator Vaughn must be dismissed for lack of personal involvement…………………………………...…………..9

    II.  Atchison's failure to protect claim fails because Officer Scroggin did not place him at substantial risk of suffering serious harm...............................................................10

    III.     Alternatively, Defendants are entitled to qualified immunity…………………...13

Certificate of Service .........................................................................................16

## INTRODUCTION

This case arises from a dispute about a global icon—Taylor Swift. *Pro se* Plaintiff Thomas Atchison, a supporter of Taylor Swift, confronted fellow inmate Alexander Davis and told him to "shut up [Taylor Swift] is a fucking angel" after Davis made disparaging comments about her. Atchison also called Davis a "bitch" and asserted that Davis was not a man because of his negative remarks about Swift. Davis became agitated by Atchison's comments, shoved Atchison, and punched him in the face. Atchison sued the corrections staff regarding the incident.

On January 23, 2024, this Court screened the matter and allowed Atchison to proceed with his Fourteenth Amendment failure-to-protect claim against Defendants DeWitt County Jail correctional officer Andrew Scroggin ("Defendant Scroggin" or "CO Scroggin") and Jail Administrator Misty Vaughn ("Defendant Vaughn" or "JA Vaughn"). Atchison's failure to protect claim fails because no defendant put him at risk of serious harm; rather, Atchison instigated the assault by confronting Davis over his comments about Swift. Additionally, JA Vaughn had no personal involvement in the matter other than investigating the incident after the assault occurred. Alternatively, Defendants are entitled to qualified immunity because there is no existing case law that holds a corrections officer liable for an assault where the plaintiff refused segregation and instigated the fight several months later. For these reasons, Defendants are entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(D).

## UNDISPUTED MATERIAL FACTS (UMF)

1.      Atchison was a pre-trial detainee at the DeWitt County Jail (hereinafter "Jail" or "DCJ") for multiple periods of time between 2019 and 2021. (Exhibit A, DeWitt County Jail Records, DC 1-17).

2.      Defendant Misty Vaughn, at all relevant times, acted as a supervising corrections officer or jail administrator employed by the DeWitt County Sheriff's Office. Atchison understood

Vaughn's role to be responding to grievances, disciplining correctional staff, and handling most affairs at the DeWitt County Jail. (Exhibit B, Deposition of Thomas Atchison taken April 24, 2025, for *Atchison v. Scroggin, et al.*, 23CV3190, [hereinafter Atchison Dep.] 5:4-16).

3.     Defendant Andrew Scroggin was acting as a corrections officer for the DeWitt County Jail at all relevant times. (Atchison Dep. 4:20-24).

4.     On August 27, 2020, Atchison was booked into the Jail by booking officer Steven Mitchell and search officer Scroggin for possession of a stolen vehicle, aggravated fleeing, and perjury. (DC 1-DC 5).

5.     Atchison testified that in early October 2020, he and Davis exchanged racial slurs through a pod wall at the Jail, with Davis calling him a "cracker." (Atchison Dep. 7:1-13, 9:13-15).

6.     Atchison testified he did not see Davis, but assumed it was Davis since Davis was the only black individual in that pod. (Atchison Dep. 8:15—9:20).

7.     Atchison testified he had said some things he should not have said. (Atchison Dep. 7:1-10).

8.     Atchison testified he likely called Davis a bitch and made a comment regarding Davis' mother. (Atchison Dep. 7:1-10).

9.     According to Atchison, Davis also told him that if Davis ever caught up with him, Davis would beat his ass. (Atchison Dep. 7:1-13).

10.     Atchison testified that after they exchanged racial slurs, he sarcastically told Davis, "assalamu alaikum." Atchison believed this phrase meant peace and blessings upon you. (Atchison Dep. 9:21—10:14).

11.    Atchison testified Davis then said to him, "Alaikum salaam." (Atchison Dep. 10:15-20).

12.    Atchison testified that he was not housed in a pod with Davis until October 24, 2020. (Atchison Dep. 13:15-17).

13.    On October 24, 2020, CO Scroggin informed Atchison that Atchison was being transferred from D pod to C pod after the corrections officers overheard Atchison and fellow pod inmate Justin Smith discussing picking locks. (Atchison Dep. 13:15—14:16).

14.    Atchison testified he told CO Scroggin, "that there's a guy in there that if you put me in there, we're going to get into a fight." (Atchison Dep. 14:5-16).

15.    According to Atchison, CO Scroggin informed that he could either go to C Pod or be transferred to segregation. (Atchison Dep. 14:5-16).

16.    Atchison chose to go to C Pod. (Atchison Dep. 14:15-16).

17.    Atchison was upset that the corrections officers moved him from D Pod to C Pod. (Atchison Dep. 14:17—15:3).

18.    Atchison stayed in the pod with Davis without any issues from about October 24, 2020 until he posted bond and was released from the DeWitt County Jail on November 17, 2020. (Atchison Dep. 16:1-14, 28:9-13; DC 1-5).

19.    On December 9, 2020, Atchison was arrested again on additional charges, including harassing a witness and possession of methamphetamine, and was booked into the DeWitt County Jail. (Atchison Dep. 16:1-14; DC 6-17).

20.    Atchison testified that CO Scroggin booked him into the DeWitt County Jail and informed him that he would be placed back in the same pod, which is where Alexander Davis was housed. (Atchison Dep. 16:8-21).

21. Atchison testified he begged CO Scroggin not to place him in that pod because he and Davis did not get along. (Atchison Dep. 16:8-21).

22. Atchison testified that CO Scroggin offered to place him in segregation instead of in the pod with Davis. (Atchison Dep. 16:8-21).

23. Atchison chose once more to be housed in the pod with Davis. (Atchison Dep. 16:8-21).

24. Atchison testified he and Davis frequently argued and played with each other, and that they generally got along well. (Atchison Dep. 25:19-24, 27:14-16).

25. Atchison testified that at one point, he and Davis were the only ones in the pod, and they created a TV schedule and watched each other's shows. (Atchison Dep. 18:12-16, 26:22—27:16).

26. Atchison testified he spoke with Davis almost every day in the pod, and they tried to keep each other sane. (Atchison Dep. 26:22—27:16).

27. Atchison testified he and Davis were friendly and talked about religion, wrestling shows such as WWE, and music. (Atchison Dep. 28:18—29:3).

28. Atchison and Davis coexisted in the pod without incident from December 9, 2020, until May 28, 2021, when Atchison said that Davis was not a man and told Davis to "shut up" and stop bad-mouthing Taylor Swift. (Atchison Dep. 18, 19:16-21, 25:2-6; DC 6-17).

29. Atchison testified that on May 27, 2021, the iHeartRadio Music Awards aired, and Davis began talking trash about Taylor Swift. (Atchison Dep. 18:3-11).

30. Atchison testified that the next morning, he was watching the Hot 20 countdown on CMT when Davis began talking trash about Taylor Swift again. (Atchison Dep. 18:12-18).

31.     According to Atchison, Davis said Taylor Swift "sounds like shit" and "she doesn't have any tits or ass." (Atchison Dep. 18:19-21).

32.     Atchison then told Davis to "shut up, she's a fucking angel." (Atchison Dep. 25:2-6).

33.     Atchison continued, telling Davis that Davis did not even know Taylor Swift and that he was not a man if he could not control his tongue. (Atchison Dep. 19:3-10).

34.     Davis pushed Atchison to the ground with his hand on his face. (Atchison Dep. 19:11-12).

35.     Atchison stood up and called Davis a "bitch," prompting Davis to punch him in the jaw. (Atchison Dep. 19:11-15, 30:3-7).

36.     Davis did not strike Atchison again, and Atchison reported the incident to the correctional officers on duty shortly afterward.  (Atchison Dep. 30:8-15).

37.     Atchison and Davis were separated, and he was moved to the watch cell. (Atchison Dep. 22:22—23:2).

38.     After the incident, CO Scroggin interviewed Atchison and Davis. (Atchison Dep. 23:3-9; Exhibit C, Andrew Scroggin's Post-Incident Interviews, DC 1212).

39.     Davis was disciplined for the incident, but Atchison did not want to press charges. (Atchison Dep. 20:14—21:12).

40.     Atchison did not inform Jail Administrator Misty Vaughn of any issues regarding Alexander Davis before the assault. (Atchison Dep. 19:22—20:8, 23:3-9).

41.     Atchison also did not speak directly with JA Vaughn after the assault. (Atchison Dep. 19:22—20:8, 23:3-9).

42.    Atchison testified that his wrist hurt for several weeks afterward, along with his head and jaw. (Atchison Dep. 32:19-24).

43.    The corrections officers on duty contacted Dr. Hughes Lochard by phone, and he prescribed Atchison an ice pack. (Atchison Dep. 33:2-9).

44.    The very next day, Dr. Lochard met with Atchison in person, administered pain medication, and provided him with an ice pack, advising him to stay hydrated and well-rested. (Atchison Dep. 33:2-9).

45.    Atchison was not diagnosed with any injuries as a result of the assault. (Atchison Dep. 33:10-13).

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). The moving party has the initial burden to demonstrate that it is entitled to judgment as a matter of law – that no reasonable jury could reach a verdict in favor of the non-moving party. *Celotex*, 477 U.S. at 323; *Matsushita Electronics, Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."). Once this burden is met, the opposing party must go beyond the pleadings and designate the specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-258. Speculation, hearsay, or conclusory allegations will not suffice. *Gorbitz v. Corvilla*, 196 F.3d 879 (7th Cir. 1999).

**ARGUMENT**

**I.**     **Atchison's failure to protect claim against Jail Administrator Vaughn must be dismissed for lack of personal involvement.**

It is well settled that "individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). Thus, "[a] plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (citations omitted); s*ee also Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). As such, a causal connection between the allegedly unconstitutional conduct and the defendant is necessary to establish liability. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). While liability is not limited to those who directly participated, there must be some showing that the defendant "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer*, 327 F. 3d at 594 (citations omitted). Plaintiffs cannot circumvent this simply by grouping all defendants together in their complaint. *Brown v. Illinois Dep't of Pub. Aid*, 318 F. Supp. 2d 696, 700 (N.D. Ill. 2004), *aff'd*, 132 F. App'x 51 (7th Cir. 2005).

Here, Jail Administrator Vaughn had no personal involvement in the matter. She was not involved in the decision to move Atchison to a different block, and Atchison did not communicate any issues concerning Davis with Vaughn before the May 28, 2021 fight. (UMF ¶¶ 13, 20, 40). Nor was there any communication between Atchison and JA Vaughn about the May 28, 2021 fight afterwards. (UMF ¶¶ 40-41).

Atchison sued Vaughn in this case only because she served as the jail administrator at the

time. However, the law is clear that a supervisory official, such as Jail Administrator Vaughn, cannot be held vicariously liable in a Section 1983 action for the acts of a subordinate employee. *Perkins v. Larsen*, 312 F.3d 872, 875 (7th Cir 2002); *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003) (explaining a police chief "cannot be liable for any constitutional violations committed by his officer simply by virtue of his supervisory role. For a supervisor to be personally responsible, she must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F. 3d 703, 708 (7th Cir. 2012) (internal quotation and citation omitted); *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (liability may attach if the conduct causing the alleged constitutional deprivation occurs at the government official's direction or with her knowledge and consent).

Here, Atchison has no evidence to show that Jail Administrator Vaughn was aware of any issues between Atchison and Davis before the May 28, 2021 fight, or that she was involved in or facilitated or directed CO Scroggins' decisions concerning where Atchison was housed in the Jail before the May 28, 2021 fight.

In sum, because Atchison cannot show that Jail Administrator Vaughn was personally involved in the alleged constitutional violation, Defendant Vaughn is entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment failure to protect claim against her.

## II.    Atchison's failure to protect claim fails because Officer Scroggin did not place him at substantial risk of suffering serious harm.

Atchison's failure to protect claim against Defendant CO Scroggin fails because Scroggins did not place Atchison at substantial risk of suffering serious harm, nor did his actions cause any harm to him. While in the custody of the DeWitt County Jail, Atchison was constitutionally entitled to a certain level of protection from the Sheriff and his deputies against violence from other detainees. *Farmer v. Brennan*, 511 U.S. 825, 834, 128 L.Ed.2d 811, 114 S.Ct. 1970 (1994).

However, the Sheriff and his deputies are not required to protect detainees from all possible harms. Instead, they are constitutionally obligated to take objectively reasonable actions to prevent conditions that pose a substantial risk of serious injury to detainees. *Id.* at 847.

Accordingly, "[t]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are: (1) [t]he defendant made an intentional decision with respect to the conditions under which plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 496 (7th Cir. 2022) (citations omitted).

Here, Atchison cannot establish the second, third, and fourth elements of a failure to protect claim. Case law in this circuit has made it clear that "[c]omplaints that convey only a generalized, vague or stale concern about one's safety typically will not support an inference that the official actual knowledge that the prisoner was in danger" while "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies that prospective assailant typically will support [such] and inference." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015); *Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015) (add parenthetical). *See also Thompson v. Modreno*, No. 18 C 7533, 2020 WL 4819266, at *4 (N.D. Ill. Aug. 17, 2020) ("To implicate the Constitution, a correctional official must have enough information to suggest an objectively serious risk to the complaining detainee's safety from another inmate."); *Jones v. Williams*, No. 18-CV-03686, 2021 WL 3408508, at *16 (N.D. Ill. Aug. 4, 2021) ("A general risk of violence between detainees is not enough[,] [a] plaintiff must assert a specific problem, and a specific threat, that a prison official

disregarded, thereby creating unconstitutional conditions.").

For example, in *Modreno*, plaintiff, a pretrial detainee at the Cook County Jail, told the defendant correctional officer that another detainee and his associates were "on some bullcrap, you see what they're doing all over the deck, we do not want to come out, leave us in here," and "you would have to be completely blind to not know what was going on[,] on that deck." *Modreno*, No. 18 C 7533 at *2. The plaintiff later got into a fight with the other detainee and brought a failure to protect claim against the correctional officer. *Id.* There, the district court held that the vague complaint of fear in the context of a jail housing potentially dangerous inmates was insufficient for a Fourteenth Amendment claim, and granted the defendant's motion for summary judgment. *Id.* at *4.

In this case, the claim against CO Scroggin should be dismissed for the same reason as the claim against the officer in *Modreno*, because Scroggins was only aware of vague complaints of fear, if any at all. In fact, Atchison first requested CO Scroggin not place him in C pod because he would fight someone in there. (UMF ¶ 14). Atchison did not identify this individual to CO Scroggin and lived in the pod with Davis and the other inmates for nearly a month without incident, until he posted bond on November 17, 2020. (UMF ¶¶ 16, 18). When Davis was rearrested and informed that he would be booked back into C pod with Davis, he told CO Scroggin that he could not be housed with Davis because he "did not get along" with him. (UMF ¶¶ 20-21). Atchison's requests are a far cry from "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies that prospective assailant typically will support [such] and inference." *Gevas*, 798 F.3d 475 at 480. Nevertheless, CO Scroggin offered Atchison an alternative place to stay both times, but Atchison chose to reside in the pod with Davis. *See* (UMF ¶¶ 15-16, 22-23).

Furthermore, the threat could not have been imminent, as the incident occurred nearly half

a year after Atchison's last report to CO Scroggin on December 9, 2020. (UMF ¶¶ 19-28). Indeed, the undisputed evidence shows that Atchison and Davis lived together for over five months and maintained a playful and cordial relationship. (UMF ¶¶ 19-28). This undermines any claim Atchison could make about having reported any imminent danger to CO Scroggin. Additionally, the undisputed evidence reveals that Atchison instigated the fight by telling Davis, "shut up—[Taylor Swift] is a fucking angel," that Davis was not a man, and later a "bitch," after Davis had pushed him. (UMF ¶¶ 28-36). Therefore, Atchison's failure to protect claim must be dismissed because there is no evidence that CO Scroggin failed to protect him from any imminent harm or caused him any harm.

### III. Alternatively, Defendants are entitled to qualified immunity.

The Supreme Court has held that public officials performing discretionary functions are shielded from liability by the doctrine of qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although qualified immunity is an affirmative defense, once a defendant has raised the defense, plaintiff bears the burden of defeating it. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). To defeat the defense of qualified immunity, plaintiff must show (1) defendants violated a constitutional right and (2) the right was so clearly established at the time of the alleged violation that it would have been clear to a reasonable actor that his conduct was unlawful. *Id.*

First, Defendant Vaughn is entitled to qualified immunity because there is no clearly established law holding a jail administrator constitutionally liable when she was not personally involved in the alleged constitutional violation. Rather, as noted above, case law makes it clear that a lack of personal involvement requires dismissal of all Section 1983 claims brought against

Defendant Vaughn. *Trout v. Frega*, 926 F. Supp. 117, 120-121 (N.D. Ill. 1996) (ruling that "[t]he mere presence of the three officers, without more, does not constitute their requisite § 1983 personal involvement in any constitutional violation which may have occurred). Defendant Vaughn did not have any personal involvement in moving Atchison, and Atchison did not communicate any issues to her about Davis. (UMF ¶¶ 13, 20, 40). This does not support a theory of liability against Defendant Vaughn. The law also clearly provides that Defendant Vaughn cannot be held liable under *respondeat superior*, simply because she is in a supervisory position. *See e.g., Perkins,* 312 F.3d 872, 875. Therefore, Defendant Vaughn is entitled to qualified immunity.

Second, there is no case law holding a defendant liable for failure to protect where an assault happens six months after a vague complaint was made to the correctional officer. Here, Atchison made vague and generalized statements to Defendant Scroggin that he could not be housed with Davis because they did not get along. (UMF ¶ 21).  This does not support a constitutional violation as stated *supra* II. Case law in this circuit clearly holds that "[a] vague complaint of fear for safety in the context of a jail housing potentially dangerous inmates is insufficient to indicate an objectively serious risk to Plaintiffs safety." *Modreno*, No. 18 C 7533 at *4 (N.D. Ill. Aug. 17, 2020).

Furthermore, Defendant Scroggin offered to place Atchison in segregation rather than in the pod with Davis, but Atchison refused. (UMF ¶¶ 15-16, 22-23). Atchison chose to reside in the pod with Davis, and they maintained a playful and cordial relationship from December 9, 2020, until May 28, 2021, when Atchison instigated the assault by telling Davis to "shut up," that he was not a man, and that he was a "bitch." (UMF ¶¶ 19-36). Thus, Defendant Scroggin is entitled to qualified immunity because there is no case law that holds a corrections officer liable for an assault

where the plaintiff refused alternative housing and instigated the fight half a year later.

On the contrary, the Seventh Circuit has held, in the context of a failure to protect claim brought by a prisoner under the Eighth Amendment, that corrections officers do not violate the Eighth Amendment if they offer to move a prisoner to protective custody in a special housing unit, but the prisoner refuses to accept the offer – even if the conditions in protective custody were not "the most pleasant of experiences" and "did not sit well with a prisoner." The Court added that "if they offer reasonable protection from the threat, they have done their duty." *See Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants summary judgment; dismiss the claims against them with prejudice; and award them costs as allowed under the law.

Bhairav Radia, #6293600
Kyle Moore, #6346862
Hoseuk Kim, #6349370
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
Phone: 847-291-0200
Email: bradia@ifmklaw.com
      kmoore@ifmklaw.com
      akim@ifmklaw.com

Respectfully submitted,

**Andrew Scroggin and Misty Vaughn**

By: *s/ Kyle R. Moore*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| THOMAS ATCHISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2023-cv-3190-JBM |
| | ) | |
| ANDREW SCROGGIN, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I certify that on September 12, 2025, I caused the foregoing, ***Defendants' motion for summary judgment and supporting memorandum of law*** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to the following registered participant(s):

None

And I hereby further certify that on the same date, I caused a copy to be mailed by U.S. postal service by having same placed in a sealed envelope with proper postage in the U.S. Mail receptacle located at 650 Dundee Road, Northbrook, Illinois, and addressed to the following:

Thomas Atchison #Y19978
Menard Correctional Center
Inmate Mail/Parcels
P.O. Box 1000
Menard, IL 62259

By:    *s/Kyle R. Moore*
Kyle R. Moore, #6346862

# DeWitt County Sheriff's Office

### 101 W Washington St.
### Clinton, IL  61727
PHONE: 217-935-3196        FAX: 217-935-3606

| | | | |
|---|---|---|---|
| NAME: | **Atchison, Thomas J** | BOOKING#: | **1-20-000275** |
| ADDRESS: | | BOOK DATE: | 8/27/2020 |
| | | BOOK TIME: | **2026** |
| PHONE: | | BOOK OFFICER: | **Mitchell, Stephen W** |
| NAME#: | **6241** | SEX: **M** | |
| DOB: | | SSN: | EDIT DATE: |
| POB: | **Pontiac** | ST: **IL**  RES STAT: **5** | EDIT TIME: |
| OL#: | | ST: **IL**  EXP: | EDIT OFFICER: |
| STATUS: | **Active** | MARITAL: **D** | SEARCH DATE: 8/27/2020 |
| HEIGHT: | **5' 7"** | WEIGHT: **165** | SEARCH TIME: **2026** |
| AGE: | **34 YRS** | EDUCATION: **12** | SEARCH OFF: **Scroggin, Andrew E** |
| RACE: | **W** | CHILDREN: **5** | SEARCH TYPE: **PAT  Pat Down** |
| HAIR COL: | **BLK** | EYE COL: **BLU** | CELL: **A1**      BED: |
| COMPLXN: | | BUILD: | EMPLOYER: **Unemployed** |
| HAND USE: | | TEETH: | ADDRESS: |

PHONE:                        POSITION: **UNE**

NCIC #:

STATE #:

BODYMARK:                        FBI #:

BODYMARK:                        INTERFACE#:

MARKS:

AUTHORITY FOR HOUSING:  **Dewitt Co**

COMMENT:

Mug Shot Date & Time 08/27/2020   2052

I:\Camera Photos\Atchison, Thomas.JPG          I:\Camera Photos\Atchison, Thomas (2).JPG











# Inmate Property Released
## DeWitt County Sheriff's Office

**Inmate Info**

| | | |
|---|---|---|
| **Name:** Atchison, Thomas J | **Sex:** M | **Booking#:** 1-20-000275 |
| **DOB:** ▮▮▮▮ | **SSN:** ▮▮▮▮ | **Booked At:** 8/27/2020 2026 |

| Qty | Type | Color | Location |
|---|---|---|---|
| 1 | Shirt | Black | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| | **Description:** polo | | |
| 1 | Pants | Blue | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| | **Description:** jeans | | |
| 1 | Belt | White | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| | **Description:** rope belt | | |
| 1 | Socks | Black | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| 1 | Underwear | White | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| | **Description:** boxers | | |
| 1 | Shoes | Black | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| 1 | OTHER | | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| | **Description:** one card, one lighter. | | |
| 1 | Bracelet | | Released 11/17/2020 1406 by Joshua Becker to Inmate |
| | **Description:** metal bravelet | | |

By signing this document, you acknowledge that you have received all of your personal property at time of release. Any property that is being held as evidence will not be returned unless by court order.

| | | |
|---|---|---|
| Inmate Signature: | | 11/17/2020  1413 |
| Officer's Signature: | | 11/17/2020  1413 |
| Officer's Signature: | | 11/17/2020  1413 |

**8**    Property Items Printed





# Issued Items Returned
## DeWitt County Sheriff's Office



**Inmate Info**

| | | |
|---|---|---|
| **Name:** Atchison, Thomas J | **Sex:** M | **Booking#:** 1-20-000275 |
| **DOB:** ▮▮▮▮ | **SSN:** ▮▮▮▮ | **Booked At:** 8/27/2020 2026 |

| Qty | Type | Description | |
|---|---|---|---|
| 1 | (2) Blankets | | Returned on 11/17/2020 at 1406 by 5064 |
| 1 | Hygiene Kits | | Returned on 11/17/2020 at 1406 by 5064 |
| 1 | Mat | | Returned on 11/17/2020 at 1406 by 5064 |
| 1 | Towel | | Returned on 11/17/2020 at 1406 by 5064 |
| 1 | Jail Uniform | xl | Returned on 11/17/2020 at 1406 by 5064 |
| 1 | Sheet | | Returned on 11/17/2020 at 1406 by 5064 |
| 1 | Shoes | 9-10 | Returned on 11/17/2020 at 1406 by 5064 |
| 1 | Underware | xl | Returned on 11/17/2020 at 1406 by 5064 |

Inmate Signature: _____ 11/17/2020 1413

Officer's Signature: _____ 11/17/2020 1413

Officer's Signature: _____ 11/17/2020 1413

**8**     **Property Items Printed**



INTERSLam Copyright © EmergiTech Inc. All rights reserved.

Page: 1
11/17/2020 1413


EXHIBIT A

# DeWitt County Sheriff's Office
## Fees Worksheet

Customer Name: _Thomas J Atchison_

Date: _11/17/2020_

Booking Number: _6241_

| Fee | Rate | Owed | Collected |
|---|---|---|---|
| Booking Fee | $80 | $80 | |
| FTA Warrant Fee | $75 | | |
| DUI Arrest Fee | $175 | | |

Fee Amount: _$80_

Bond Amount: _$8,250_

Received From: _____

Receipt Number: _____

Officer Signature: ▮▮▮▮▮▮▮▮▮  _#5844_

## Make Checks Payable to DeWitt Co. Sheriff

**EXHIBIT A**

## ACKNOWLEDGEMENT OF BAIL BOND FEE AND PROMISE TO PAY

Name of Accused: _Thomas Atchison_

Arrest Charges: _Poss Stolen vehicle, Ags fleeing, Perjury_

Case Number: _20-CF-66  20-CF-89_

My formal or arrest charges include only Category B offenses, and my amount of cash bond has been reduced to $0. _Cash: $80_

I understand the following:

1. If my bond is reduced to $0, I am still obligated to pay the bond fee to secure my release.

2. If I am unable to pay the bond fee, then I may be released without paying the bond fee. In this event, the bond fee will be assessed as part of my court costs if formal charges are filed. If formal charges are not filed, I promise to pay the bond fee within 30 days of my release or as otherwise ordered by the court.

Date _11/17/2020_        Signature _____



# SUSPECT / ARRESTEE SUPPLEMENT

| | INCIDENT NO. |
|---|---|
| | 1-20-001691 |

| VICTIM | OFFENSE | INCIDENT DATE / TIME |
|---|---|---|
| | HARASS WITNESS | 12/09/2020  1357 |

| NO. | [X] ADULT  [ ] JUVENILE | CHECK APPROPRIATE CATEGORY | CHARGES FILED? |
|---|---|---|---|
| 1 | | [ ] SUSPECT  [ ] ARRESTEE  [ ] SUSPECT / ARRESTEE  [ ] RUNAWAY  [ ] MISSING  [ ] OTHER | [X] Y  [ ] N |

**NAME** (Last, First, Middle): Atchison, Thomas J
ALIAS
SSN: ~~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~~
GANG AFFILIATION

ADDRESS (Street, Apt., City, State, Zip): ~~████████~~
PHONE: ~~(217) 671-5756~~

EMPLOYER NAME AND ADDRESS (Street, Apt., City, State, Zip): Unemployed
PHONE

| PLACE OF BIRTH | DL# / STATE | OCCUPATION / SCHOOL |
|---|---|---|
| Pontiac IL | A32283086154 / IL | Unemployed |

| AGE / D.O.B. | | SEX | RACE | | | HGT | WGT | HAIR | EYES |
|---|---|---|---|---|---|---|---|---|---|
| 34 YRS ~~████~~ | | M | W [X] | B [ ] | U [ ] | 507 | 165 | BLK | BLU |

| MARITAL STATUS | SCARS, MARKS, TATTOOS |
|---|---|
| D | |

ADDITIONAL DESCRIPTIVES

SUSPECTED OF USING: [ ] ALCOHOL  [ ] DRUGS
POTENTIAL INJURIES

RESIDENT STATUS: [ ] 01 RESIDENT  [ ] 02 TOURIST  [ ] 03 MILITARY  [ ] 04 STUDENT  [ ] 05 OTHER  [ ] 06 UNKNOWN

TYPE WEAPON USED / ARRESTEE WAS ARMED WITH

SUSPECT USED 1. __1__  2. ___  3. ___          ARRESTEE ARMED WITH 1. ___  2. ___  3. ___

| | | |
|---|---|---|
| 99 [ ] NONE | 13B [ ] OTHER FULLY AUTOMATIC FIREARM | 17 [ ] SIMULATED FIREARM | 50 [ ] POISON |
| 11 [ ] FIREARM | 14 [ ] SHOTGUN | 18 [ ] BB / PELLET GUN | 60 [ ] EXPLOSIVES |
| 12 [ ] HANDGUN | 15 [ ] OTHER FIREARM | 20 [ ] KNIFE / CUTTING INSTRUMENT | 65 [ ] FIRE / INCENDIARY DEVICE |
| 12A [ ] AUTOMATIC HANDGUN | 15A [ ] SEMI-AUTOMATIC SPORTING RIFLE | 30 [ ] BLUNT OBJECT | 70 [ ] DRUGS / NARC / SLEEPING PILLS |
| 13 [ ] RIFLE | 15B [ ] SEMI-AUTOMATIC ASSAULT FIREARM | 35 [ ] MOTOR VEHICLE | 80 [ ] OTHER WEAPON |
| 13A [ ] FULLY AUTOMATIC RIFLE | 15C [ ] MACHINE PISTOL | 40 [ ] PERSONAL WEAPON | 85 [ ] ASPHYXIATION |
| | 16 [ ] IMITATION FIREARM | | U [ ] UNKNOWN |

| NAME | ADDRESS (Street, Apt., City, State, Zip) | PHONE |
|---|---|---|
| 1. | 1. | 1. |
| 2. | 2. | 2. |

## ARREST INFORMATION

| ARREST / OFFENSE DESCRIPTION | ARREST / OFFENSE CODE | F / M & DEGREE | ARREST LARCENY TYPE |
|---|---|---|---|
| 1. HARASS WITNESS | 1. 0011368 | 1. | 23A [ ] POCKET PICKING |
| 2. | 2. | 2. | 23B [ ] PURSE SNATCHING |
| 3. | 3. | 3. | 23C [ ] SHOPLIFTING |
| | | | 23D [ ] THEFT FROM BUILDING |
| 4. | 4. | 4. | 23E [ ] THEFT FROM COIN-OP MACH. |
| | | | 23F [ ] THEFT FROM MOTOR VEH. |
| 5. | 5. | 5. | 23G [ ] MOTOR VEH. PART |
| | | | 240 [ ] THEFT OF MOTOR VEHICLE |
| | | | 23H [ ] OTHER: _____ |

| ARREST DATE | TIME | ARREST LOCATION (Street, Apt., City, State, Zip) |
|---|---|---|
| 12/09/2020 | 1345 | 201 W Washington ST  Clinton, IL  61727 |

| ARREST TRANSACTION NUMBER | WARRANT NUMBER | ARREST DISPOSITION | BAIL |
|---|---|---|---|
| 01--20--0154 | 20-CF-97 | Lodged At DCSO | $5,000.00 |

MIRANDA WITNESSED BY:
TIME READ

| FINGERPRINTED | FINGERPRINT CARD NO. | PHOTOS TAKEN | NO. TAKEN | PHOTO ID # | FBI / BCI # |
|---|---|---|---|---|---|
| [X] Y  [ ] N | | [X] Y  [ ] N | 2 | | |

| MULTIPLE ARREST INDICATOR | ARREST TYPE | |
|---|---|---|
| [ ] COUNT ARRESTEE  [ ] MULTIPLE ARREST INDICATOR  [X] N/A | 1 [ ] COMPLAINT  2 [ ] IN-PROGRESS  3 [ ] WARRANT | 4 [ ] SUMMONS  5 [ ] ORDER OF PROTECTION  6 [ ] CUSTODY  9 [ ] OTHER |

| JUV. PARENT / GDN. NOTIFIED | [ ] Y | DATE / TIME NOTIFIED | NOTIFIED BY | JUVENILE DISPOSITION | [ ] HANDLED WITHIN DEPT.  [ ] REFERRED TO OTHER AUTHORITIES  [X] N/A |
|---|---|---|---|---|---|

| PARENT / GUARDIAN ADDRESS (Street, Apt., City, State, Zip) | RELATIONSHIP | PHONE |
|---|---|---|
| | | |
| PARENT / GUARDIAN ADDRESS (Street, Apt., City, State, Zip) | RELATIONSHIP | PHONE |

| PREVIOUS RUN / MISS | [ ] Y [ ] N | DATE OF LAST CONTACT | DATE OF EMANCIPATION | NCIC # | DATE / TIME ENTERED |
|---|---|---|---|---|---|

LAST SEEN WEARING

| REPORTING OFFICER / ARRESTING OFFICER | | BADGE NO. | DATE |
|---|---|---|---|
| Becker, Joshua / Becker, Joshua () | ~~████~~ | 5904 | 12/09/2020 |
| APPROVING OFFICER | | BADGE NO. | DATE |

| COURT | | |
|---|---|---|
| DeWitt County Court | | 10/2020 |

**EXHIBIT A**

# SUSPECT / ARRESTEE SUPPLEMENT

| | INCIDENT NO. |
|---|---|
| | 1-20-001691 |

| VICTIM | OFFENSE | INCIDENT DATE / TIME |
|---|---|---|
| | **HARASS WITNESS** | **12/09/2020**  **1357** |

| NO. 1 | ☒ ADULT  ☐ JUVENILE | CHECK APPROPRIATE CATEGORY ☐ SUSPECT  ☐ ARRESTEE  ☐ SUSPECT / ARRESTEE  ☐ RUNAWAY  ☐ MISSING  ☐ OTHER | CHARGES FILED? ☒ Y  ☐ N |
|---|---|---|---|

**NAME** (Last, First, Middle)
**Atchison, Thomas J**    SSN ██████

ALIAS    GANG AFFILIATION

ADDRESS (Street, Apt., City, State, Zip)    PHONE ██████
███████████████████

EMPLOYER NAME AND ADDRESS (Street, Apt., City, State, Zip)    PHONE
**Unemployed** , ,

| PLACE OF BIRTH | DL# / STATE | OCCUPATION / SCHOOL |
|---|---|---|
| **Pontiac IL** | ████████████ IL | **Unemployed** |

| AGE / D.O.B. | SEX | RACE | HGT | WGT | HAIR | EYES |
|---|---|---|---|---|---|---|
| **34 YRS** ████ | **M** | W ☒  B ☐  A ☐  I ☐  U ☐ | **507** | **165** | **BLK** | **BLU** |

MARITAL STATUS  D    SCARS, MARKS, TATTOOS

ADDITIONAL DESCRIPTIVES

SUSPECTED OF USING: ☐ ALCOHOL  ☐ DRUGS    POTENTIAL INJURIES

RESIDENT STATUS  01 ☐ RESIDENT  02 ☐ TOURIST  03 ☐ MILITARY  04 ☐ STUDENT  05 ☐ OTHER  06 ☐ UNKNOWN

TYPE WEAPON USED / ARRESTEE WAS ARMED WITH

SUSPECT USED 1. **1**  2. ___  3. ___    ARRESTEE ARMED WITH 1. ___  2. ___  3. ___

| 99 ☐ NONE | 13B ☐ OTHER FULLY AUTOMATIC FIREARM | 17 ☐ SIMULATED FIREARM | 50 ☐ POISON |
|---|---|---|---|
| 11 ☐ FIREARM | 14 ☐ SHOTGUN | 18 ☐ BB / PELLET GUN | 60 ☐ EXPLOSIVES |
| 12 ☐ HANDGUN | 15 ☐ OTHER FIREARM | 20 ☐ KNIFE / CUTTING INSTRUMENT | 65 ☐ FIRE / INCENDIARY DEVICE |
| 12A ☐ AUTOMATIC HANDGUN | 15A ☐ SEMI-AUTOMATIC SPORTING RIFLE | 30 ☐ BLUNT OBJECT | 70 ☐ DRUGS / NARC / SLEEPING PILLS |
| 13 ☐ RIFLE | 15B ☐ SEMI-AUTOMATIC ASSAULT FIREARM | 35 ☐ MOTOR VEHICLE | 80 ☐ OTHER WEAPON |
| 13A ☐ FULLY AUTOMATIC RIFLE | 15C ☐ MACHINE PISTOL | 40 ☐ PERSONAL WEAPON | 85 ☐ ASPHYXIATION |
| | 16 ☐ IMITATION FIREARM | | U ☐ UNKNOWN |

| NAME | ADDRESS (Street, Apt., City, State, Zip) | PHONE |
|---|---|---|
| 1. | 1. | 1. |
| 2. | 2. | 2. |

## ARREST INFORMATION

| ARREST / OFFENSE DESCRIPTION | ARREST / OFFENSE CODE | F / M & DEGREE | ARREST LARCENY TYPE |
|---|---|---|---|
| 1. **HARASS WITNESS** | 1. **0011368** | 1. | 23A ☐ POCKET PICKING |
| 2. | 2. | 2. | 23B ☐ PURSE SNATCHING |
| 3. | 3. | 3. | 23C ☐ SHOPLIFTING |
| | | | 23D ☐ THEFT FROM BUILDING |
| 4. | 4. | 4. | 23E ☐ THEFT FROM COIN-OP MACH. |
| | | | 23F ☐ THEFT FROM MOTOR VEH. |
| 5. | 5. | 5. | 23G ☐ MOTOR VEH. PART |
| | | | 240 ☐ THEFT OF MOTOR VEHICLE |
| | | | 23H ☐ OTHER:_____ |

| ARREST DATE | TIME | ARREST LOCATION (Street, Apt., City, State, Zip) | |
|---|---|---|---|
| **12/09/2020** | **1345** | **201 W Washington ST  Clinton, IL  61727** | |

| ARREST TRANSACTION NUMBER | WARRANT NUMBER | ARREST DISPOSITION | BAIL |
|---|---|---|---|
| **01--20--0154** | **20-CF-97** | **Lodged At DCSO** | **$5,000.00** |

MIRANDA WITNESSED BY:    TIME READ

| FINGERPRINTED ☒ Y ☐ N | FINGERPRINT CARD NO. | PHOTOS TAKEN ☒ Y ☐ N | NO. TAKEN 2 | PHOTO ID NO. | FBI / BCI # |
|---|---|---|---|---|---|

| MULTIPLE ARREST INDICATOR ☐ COUNT ARRESTEE | ☐ MULTIPLE ARREST INDICATOR  ☒ N/A | ARREST TYPE 1 ☐ COMPLAINT  2 ☒ IN-PROGRESS  3 ☐ WARRANT | 4 ☐ SUMMONS  5 ☐ ORDER OF PROTECTION | 6 ☐ CUSTODY  9 ☐ OTHER |
|---|---|---|---|---|

| JUV. PARENT / GDN. NOTIFIED ☐ Y | DATE / TIME NOTIFIED | NOTIFIED BY | JUVENILE DISPOSITION ☐ HANDLED WITHIN DEPT.  ☐ REFERRED TO OTHER AUTHORITIES | ☒ N/A |
|---|---|---|---|---|

PARENT / GUARDIAN ADDRESS (Street, Apt., City, State, Zip)    RELATIONSHIP    PHONE

PARENT / GUARDIAN ADDRESS (Street, Apt., City, State, Zip)    RELATIONSHIP    PHONE

| PREVIOUS RUN / MISS ☐ Y | DATE OF LAST CONTACT | DATE OF EMANCIPATION | NCIC # | DATE / TIME ENTERED |
|---|---|---|---|---|

LAST SEEN WEARING

| REPORTING OFFICER / ARRESTING OFFICER | | BADGE NO. | DATE |
|---|---|---|---|
| **Becker, Joshua / Becker, Joshua ()** | | **5704** | **12/09/2020** |

| APPROVING OFFICER | | BADGE NO. | DATE |
|---|---|---|---|

| COURT | COURT DATE |
|---|---|
| **DeWitt County Court** | ██/10/2020 |

**EXHIBIT A**

INCIDENT NO.

# SUSPECT / ARRESTEE SUPPLEMENT

1-20-001692

| VICTIM | OFFENSE | INCIDENT DATE / TIME |
|---|---|---|
| | POSSESSION OF METH< 5 GRA | 12/09/2020    1400 |

| NO. 1 | ☒ ADULT ☐ JUVENILE | CHECK APPROPRIATE CATEGORY ☐ SUSPECT ☐ ARRESTEE ☐ SUSPECT / ARRESTEE ☐ RUNAWAY ☐ MISSING ☐ OTHER | CHARGES FILED? ☒ Y ☐ N |
|---|---|---|---|

NAME (Last, First, Middle)
**Atchison, Thomas J**

SSN ▓▓▓▓▓▓

ALIAS

GANG AFFILIATION

ADDRESS (Street, Apt., City, State, Zip)
~~409.5 S Side Square - Apt. D, Clinton, IL 61727~~

PHONE
**(217) 671-1798**

EMPLOYER NAME AND ADDRESS (Street, Apt., City, State, Zip)
**Unemployed** , ,

PHONE

PLACE OF BIRTH
**Pontiac IL**

DL# / STATE ▓▓▓▓▓▓▓

OCCUPATION / SCHOOL
**Unemployed**

| AGE / D.O.B. **34 YRS** | | SEX **M** | RACE B ☐ A ☐ HGT **507** | WGT **165** | HAIR **BLK** | EYES **BLU** |
|---|---|---|---|---|---|---|
| | | | W ☒ I ☐ U ☐ | | | |

MARITAL STATUS **D**

SCARS, MARKS, TATTOOS

ADDITIONAL DESCRIPTIVES

SUSPECTED OF USING: ☐ ALCOHOL ☐ DRUGS

POTENTIAL INJURIES

RESIDENT STATUS   01 ☐ RESIDENT   02 ☐ TOURIST   03 ☐ MILITARY   04 ☐ STUDENT   05 ☐ OTHER   06 ☐ UNKNOWN

TYPE WEAPON USED / ARRESTEE WAS ARMED WITH

SUSPECT USED 1._____ 2._____ 3._____     ARRESTEE ARMED WITH 1._____ 2._____ 3._____

| 99 ☐ NONE | 13B ☐ OTHER FULLY AUTOMATIC FIREARM | 17 ☐ SIMULATED FIREARM | 50 ☐ POISON |
|---|---|---|---|
| 11 ☐ FIREARM | 14 ☐ SHOTGUN | 18 ☐ BB / PELLET GUN | 60 ☐ EXPLOSIVES |
| 12 ☐ HANDGUN | 15 ☐ OTHER FIREARM | 20 ☐ KNIFE / CUTTING INSTRUMENT | 65 ☐ FIRE / INCENDIARY DEVICE |
| 12A ☐ AUTOMATIC HANDGUN | 15A ☐ SEMI-AUTOMATIC SPORTING RIFLE | 30 ☐ BLUNT OBJECT | 70 ☐ DRUGS / NARC / SLEEPING PILLS |
| 13 ☐ RIFLE | 15B ☐ SEMI-AUTOMATIC ASSAULT FIREARM | 35 ☐ MOTOR VEHICLE | 80 ☐ OTHER WEAPON |
| 13A ☐ FULLY AUTOMATIC RIFLE | 15C ☐ MACHINE PISTOL | 40 ☐ PERSONAL WEAPON | 85 ☐ ASPHYXIATION |
| | 16 ☐ IMITATION FIREARM | | U ☐ UNKNOWN |

| NAME | ADDRESS (Street, Apt., City, State, Zip) | PHONE |
|---|---|---|
| 1. | 1. | 1. |
| 2. | 2. | 2. |

ARREST INFORMATION

| ARREST / OFFENSE DESCRIPTION | ARREST / OFFENSE CODE | F / M & DEGREE | ARREST LARCENY TYPE |
|---|---|---|---|
| 1. POSS AMT CON SUB EXCEPT(A)/(D) | 1. 5101110 | 1. | 23A ☐ POCKET PICKING |
| 2. POSSESSION OF METH< 5 GRAMS | 2. 0013997 | 2. | 23B ☐ PURSE SNATCHING |
| 3. | 3. | 3. | 23C ☐ SHOPLIFTING |
| | | | 23D ☐ THEFT FROM BUILDING |
| 4. | 4. | 4. | 23E ☐ THEFT FROM COIN-OP MACH. |
| | | | 23F ☐ THEFT FROM MOTOR VEH. |
| 5. | 5. | 5. | 23G ☐ MOTOR VEH. PART |
| | | | 240 ☐ THEFT OF MOTOR VEHICLE |
| | | | 23H ☐ OTHER:_____ |

| ARREST DATE **12/09/2020** | TIME **1711** | ARREST LOCATION (Street, Apt., City, State, Zip) **201 W Washington ST Clinton, IL  61727** | | BAIL |
|---|---|---|---|---|

| ARREST TRANSACTION NUMBER **01--20--0155** | WARRANT NUMBER | ARREST DISPOSITION **Lodged At DCSO** | TIME READ |
|---|---|---|---|

MIRANDA WITNESSED BY:

| FINGERPRINTED ☐ Y ☐ N | FINGERPRINT CARD NO. | PHOTOS TAKEN ☐ Y ☒ N | NO. TAKEN **0** | PHOTO ID NO. | FBI / BCI # |
|---|---|---|---|---|---|

| MULTIPLE ARREST INDICATOR ☐ COUNT ARRESTEE   ☐ MULTIPLE ARREST INDICATOR   ☒ N / A | ARREST TYPE   1 ☐ COMPLAINT   2 ☐ IN-PROGRESS   3 ☐ WARRANT   4 ☒ SUMMONS   5 ☐ ORDER OF PROTECTION   6 ☐ CUSTODY   9 ☐ OTHER |
|---|---|

| JUV. PARENT / GDN. NOTIFIED   ☐ Y ☐ N | DATE / TIME NOTIFIED | NOTIFIED BY | JUVENILE DISPOSITION   ☐ HANDLED WITHIN DEPT.   ☐ REFERRED TO OTHER AUTHORITIES   ☒ N / A |
|---|---|---|---|

| PARENT / GUARDIAN ADDRESS (Street, Apt., City, State, Zip) | RELATIONSHIP | PHONE |
|---|---|---|
| PARENT / GUARDIAN ADDRESS (Street, Apt., City, State, Zip) | RELATIONSHIP | PHONE |

| PREVIOUS RUN / MISS ☐ Y ☐ N | DATE OF LAST CONTACT | DATE OF EMANCIPATION | NCIC # | DATE / TIME ENTERED |
|---|---|---|---|---|

LAST SEEN WEARING

| REPORTING OFFICER / ARRESTING OFFICER **Pippin, Scott / Pippin, Scott (4613)** | BADGE NO. **4613** | DATE **12/09/2020** |
|---|---|---|
| APPROVING OFFICER | BADGE NO. | DATE |

| COURT **DeWitt County Court** | COURT DATE **12/10/2020** |
|---|---|

**EXHIBIT A**

## IN THE SIXTH JUDICIL CIRCUIT COURT, DeWitt COUNTY, ILLINOIS

### BAIL BOND

PEOPLE OF THE STATE OF ILLINOIS
-VS-

Defendant _Thomas J Atchison_ D.O.B ████████ Court Case Number _2020-CF-89_
Address ████████████████████
City, State, Zip ████████████████
Originating Department _DCSO_
The person named above, as defendant, and whose signature appears below, has been charged with the offense of
_Perjury_
Bail for this offense has been set at $ _7,500_ dollars ☐ RULE OF THE COURT ☒ JUDGE _Koritz_
Therefore, in consideration of being released from custody, the person charged, he or she, and the surety, if any agree:
1. That they are indebted to the people of the State of Illinois in the full amount of bail.

2. That the person charged will:
   A. ☒ Appear to answer the charges in the Circuit Courtroom for the 6th Judicial Circuit, Dewitt Courthouse, 101 W. Washington, Clinton IL on _December 23rd, 2020_, at the hour of _9:00_ (a.m.)/p.m., and appear each time thereafter as ordered by the court, until discharged or final order of the Court.
      ☐ Appear in _____ County Court, on _____, and and appear each time as ordered by _____ Court, until discharged or final order of the Court.
   B. That said defendant shall submit himself to orders and process of said Court.
   C. Not leave the State of Illinois without permission of the Court.
   D. Not violate any criminal statute or law of any jurisdiction
   E. Give written notice to the clerk of this Court within 24 hours of any change of address.
   F. ☐ Other conditions: _____

3. That as security for performance of this agreement, the person charged, and/or the surely, has deposited the following:
   A. ☒ 10% BOND. The person charged has deposited, in cash, 10 % of the amount of Bail as set forth above.
      Amount of money deposited $ _750,00_ (Minimum $25.00)
      Driver's license No. _____ deposited as aditional bail (Chap. 110A. Section 526d (3-4-5-7)
      ☐ Booking fee $80 ☐ DUI fee $175 ☐ FTA fee $75
   B ☐ FULL CASH BOND, Amount of Deposit $ _____
      (Must equal bail set)
   C. ☐ REAL ESTATE BOND. (Seperate sworn statement and schedule required.) Approved _____, Judge
   D. ☐ STOCKS, BONDS, SECURITIES: (Separate sworn statement and schedule required.) Approved _____, Judge
   E. ☐ RECONIZANCE BOND. Approved _____

---

### NOTICE TO THE PERSON PROVIDING BAIL MONEY OTHER THAN THE DEFENDANT

I hereby acknoledge that I have posted bail for the defendant named above. I further understand that if the defendant fails to comply with the conditions of this bail bond, that the court shall enter an order declaring the bail be forfeited and used to pay costs, attorney's fees, fines or other purposes by the court. I further acknoledge and agree to the conditions on the reverse of this form.

Signature ████████████████
Name _Windell O Atchison_
Address ████████████████
City, State and ZIP ████████████████
Telephone No. ████████████████

Issued on _November 17, 2020_

Signed before me and security received

_J Beaber #50604_

Judge———  Circuit Clerk  (Peace Officer)

Police Dept _DCSO_

---

### CERTIFICATE OF DEFENDANT

I, the defedant named above, do hereby state that I know and undestand the terms and conditions of this bail bond form. I understand further that if at any time prior to the final disposition of the charge(s) I escape or am released on bond and fail to appear in court when required by the court, the result of my failure to appear will be as follows: I thereby waive my right to confront the witnesses against me; the trial can proceed in my absence; I forfiet the security money posted; judgement will be entered against me for the full amount of this bond, plus costs; a warrant may be issued, in which event additional bond money may be required. I understand and except the terms and conditions set forth above and on the reverse side of this bail bond.

Signature of Defendant ████████████████
Address ████████████████
City, State, ZIP ████████████████
Telephone No. ████████████

#### ASSIGNMENT OF BAIL BOND BY THE DEFENDANT
I hereby authorize the return of the monies posted above to the person shown on this bail bond as having provided monies for my bail after all conditions of this bail bond have been met.

Signature of Defendant ████████████

**EXHIBIT A**

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
DE WITT COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | |
| | ) | |
| VS. | ) | NO.   20-CF-*97* |
| | ) | |
| **THOMAS J. ATCHISON** | ) | |
| Defendant. | ) | |

## WARRANT OF ARREST

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS:

> RECEIVED
> DEC   8 REC'D 20
> DEWITT CO. SHERIFF'S DEPT.

You are hereby commanded to arrest <u>Thomas J. Atchison: 405 ½ south side square APT B</u>, <u>Clinton, IL 61727</u> a **MALE** person whose birth date is on or about <u>05/30/1986</u>, and bring said person without unnecessary delay before <u>Judge Koritz</u> of the Circuit Court of the <u>Sixth</u> Judicial Circuit, <u>DeWitt</u> County, in the courtroom usually occupied by him in the <u>DeWitt</u> County Courthouse in the City of <u>Clinton</u>, or if he is absent or unable to act, before the nearest or most accessible court in said County, to answer a charge made against said person for the offenses of <u>**HARASSMENT OF A WITNESS**</u> hold said person to bail.

The amount of bail is $ <u>5,000</u> / 10%.   *No Contact with Sarah Zook*

Geographical limit on the execution of this warrant: NO GEOGRAPHICAL LIMIT
ISSUED AT _____ DE WITT _____ COUNTY, ILLINOIS, this

___7___ Day of _Dec_ , 2020.

_____
JUDGE

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) ss. |
| COUNTY OF DE WITT | ) |

### RETURN OF SERVICE

I have executed the within Warrant by arresting the within-named defendant.  In accordance with the provisions of 725 ILCS 5/110-9, Illinois Compiled Statutes, defendant release on bail in sum of $_____, with security:

(Description of Security)

(Surety: _____ )
           (Name)                    (Address)

this _____ day of _____, _____, to appear in court on _____ the
day of _____, at _____.M. o'clock, Central_____ Time.
                            (Standard or Daylight)

FEES: Service and Return $ <u>60</u>; Mileage( <u>0</u> mi.@ <u>0</u>¢)$ <u>0</u> ;TOTAL:$ <u>60.50</u>

██████████████ #5864 (Signature)

_Correctional Officer_ (Official Capacity)

**EXHIBIT A**


IN THE SIXTH JUDICIL CIRCUIT COURT, DeWitt COUNTY, ILLINOIS

**BAIL BOND**

PEOPLE OF THE STATE OF ILLINOIS
—VS—

Defendant _Thomas J Atchison_    D.O.B ████████   Court Case Number _2020-CF-66_
Address ████████████████
City, State, Zip ████████████████
Originating Department _DCSO_
The person named above, as defendant, and whose signature appears below, has been charged with the offense of
_Aid/Abet/Poss/Sell Stolen Vehicle, Agg Fleeing 21 mph over_
Bail for this offense has been set at $ _75,000_ _____ dollars ☐ RULE OF THE COURT ☒ JUDGE _Koritz_
Therefore, in consideration of being released from custody, the person charged, he or she, and the surety, if any agree:
1. That the person charged is indebted to the people of the State of Illinois in the full amount of bail.

2. That the person charged will:
   A. ☒ Appear to answer the charges in the Circuit Courtroom for the 6th Judicial Circuit, Dewitt Courthouse, 101 W. Washington, Clinton IL on
     _December 11, 2020_, at the hour of _9:00_ (a.m.)/p.m., and appear each time thereafter as ordered
     by the court, until discharged or final order of the Court.
     ☐ Appear in _____ County Court, on _____, and and appear each time as ordered by
     Court, until discharged or final order of the Court.
   B.   That said defendant shall submit himself to orders and process of said Court.
   C.   Not leave the State of Illinois without permission of the Court.
   D.   Not violate any criminal statute or law of any jurisdiction
   E.   Give written notice to the clerk of this Court within 24 hours of any change of address.
   F. ☐ Other conditions: _____

3. That as security for performance of this agreement, the person charged, and/or the surely, has deposited the following:
   A. ☒ 10% BOND. The person charged has deposited, in cash, 10 % of the amount of Bail as set forth above.
     Amount of money deposited $ _7,500_ (Minimum $25.00)
     Driver's license No. _____ deposited as aditional bail (Chap. 110A. Section 526d (3-4-5-7)
     ☐ Booking fee $80 ☐ DUI fee $175 ☐ FTA fee $75
   B ☐ FULL CASH BOND, Amount of Deposit $_____
     (Must equal bail set)
   C. ☐ REAL ESTATE BOND. (Sperate sworn statement and schedule required.) Approved _____, Judge
   D. ☐ STOCKS, BONDS, SECURITIES: (Separate sworn statement and schedule required.) Approved _____, Judge
   E. ☐ RECONIZANCE BOND. Approved _____, Judge

---

**NOTICE TO THE PERSON PROVIDING BAIL MONEY
OTHER THAN THE DEFENDANT**

I hereby acknoledge that I have posted bail for the defendant named above. I
further understand that if the defendant fails to comply with the conditions of
this bail bond, that the court shall enter an order declaring the bail to be
forfeited and ordered to pay costs, attorney's fees, fines or other purposes by the court.
I further acknoledge and agree to the conditions on the reverse of this form.

Signature ████████████████
Name _Wendell O Atchison_
Address ████████████████
City, State and ZIP ████████████████
Telephone No. _352-546-1080_

Issued on _November 17, 2020_

Signed before me and security received

_J Becker #5064_
~~Judge~~  ~~Circuit Clerk~~  (Peace Officer)

Police Dept _DCSD_

---

**CERTIFICATE OF DEFENDANT**

I, the defedant named above, do hereby state that I know and
undestand the terms and conditions of this bail bond form. I un-
derstand further that if at any time prior to the final disposition of
the charge(s) I escape or am released on bond and fail to appear
in court when required by the court, the result of my failure to
appear will be as follows: I hereby waive my right to confront the
witnesses against me; the trial can proceed in my absence; I for-
fiet the security money posted; judgement will be entered against
me for the full amount of this bond, plus costs; a warrant may be
issued, in which event additional bond money may be required. I
understand and except the terms and conditions set forth above
and on the reverse side of this bail bond

Signature of Defendant ████████████████
Address ████████████████
City, State, ZIP ████████████████
Telephone No. _____

**ASSIGNMENT OF BAIL BOND BY THE DEFENDANT**
I hereby authorize the return of the monies posted shown to the person
shown on this bail bond as having provided monies for my bail after
all conditions of this bail bond have been met.
Signature of Defendant _____

---

WHITE COPY - CIRCUIT CLERK     YELLOW COPY - DEFENDANT

**EXHIBIT A**



**FILED**
DeWitt County, Illinois

**DEC 07 2020**

*Michelle Van Valey*
Clerk of the Circuit Court

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
DE WITT COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS )
)
VS. )   NO.   20-CF-**97**
)
**THOMAS J. ATCHISON** )
Defendant. )

## WARRANT OF ARREST

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS:

You are hereby commanded to arrest <u>Thomas J. Atchison: 405 ½ south side square APT B</u>, <u>Clinton, IL 61727</u> a **MALE** person whose birth date is on or about <u>05/31/1986</u>, and bring said person without unnecessary delay before <u>Judge Koritz</u> of the Circuit Court of the <u>Sixth</u> Judicial Circuit, <u>DeWitt</u> County, in the courtroom usually occupied by him in the <u>DeWitt</u> County Courthouse in the City of <u>Clinton</u>, or if he is absent or unable to act, before the nearest or most accessible court in said County, to answer a charge made against said person for the offenses of <u>**HARASSMENT OF A WITNESS**</u> hold said person to bail.

The amount of bail is $ <u>5,000</u> / 10%.   No Contact with Sarah Zook

Geographical limit on the execution of this warrant: NO GEOGRAPHICAL LIMIT

ISSUED AT _____ <u>DE WITT</u> _____ COUNTY, ILLINOIS, this

<u>7</u> Day of <u>Dec</u>, 2020.

_____
JUDGE

STATE OF ILLINOIS )
) ss.
COUNTY OF DE WITT )

## RETURN OF SERVICE

I have executed the within Warrant by arresting the within-named defendant. In accordance with the provisions of 725 ILCS 5/110-9, Illinois Compiled Statutes, defendant release on bail in sum of $_____, with security: _____

(Description of Security)
_____

(Surety:_____ (Address)
(Name)

this _____ day of _____, _____, to appear in court on _____ the

day of _____, at _____.M. o'clock, Central _____ Time.
(Standard or Daylight)

FEES: Service and Return $_____; Mileage(_____mi.@____¢)$_____;TOTAL:$_____.

_____ (Signature)

_____ (Official Capacity)

**EXHIBIT A**



IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
DE WITT COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | |
| | ) | |
| VS. | ) | NO. 20-CF-*97* |
| | ) | |
| **THOMAS J. ATCHISON** | ) | |
| Defendant. | ) | |

### WARRANT OF ARREST

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS:

You are hereby commanded to arrest **Thomas J. Atchison: 405 ½ south side square APT B , Clinton, IL 61727**  a **MALE** person whose birth date is on or about **05/30/1986**, and bring said person without unnecessary delay before Judge Koritz of the Circuit Court of the Sixth Judicial Circuit, DeWitt County, in the courtroom usually occupied by him in the DeWitt County Courthouse in the City of Clinton, or if he is absent or unable to act, before the nearest or most accessible court in said County, to answer a charge made against said person for the offenses of **HARASSMENT OF A WITNESS** hold said person to bail.

The amount of bail is $ *5,000* / 10%.    *No Contact with Sarah Zook*
Geographical limit on the execution of this warrant: NO GEOGRAPHICAL LIMIT
ISSUED AT _____ DE WITT _____ COUNTY, ILLINOIS, this
_*7*_ Day of _*Dec*_ , 2020.

_____
JUDGE

---

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) ss. |
| COUNTY OF DE WITT | ) |

### RETURN OF SERVICE

I have executed the within Warrant by arresting the within-named defendant.  In accordance with the provisions of 725 ILCS 5/110-9, Illinois Compiled Statutes, defendant release on bail in sum of $_____, with security:

_____
(Description of Security)

(Surety:_____)
                    (Name)                                    (Address)
this _____ day of _____, _____, to appear in court on _____ the
day of _____, at _____.M. o'clock, Central_____ Time.
                                            (Standard or Daylight)
FEES: Service and Return $ *60*; Mileage( *0* mi.@ *0* ¢)$ *0* ;TOTAL:$ *60.00*

_____ *Hershey* (Signature)
*Correctional Officer* (Official Capacity)

# EXHIBIT A



**COPY**



FILED
DeWitt County, Illinois

DEC 07 2020

Michelle Van Valey
Clerk of the Circuit Court

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
DE WITT COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS    )
)
VS.    )    NO.    20-CF-97
)
**THOMAS J. ATCHISON**    )
Defendant.    )

## WARRANT OF ARREST

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS:

You are hereby commanded to arrest <u>Thomas J. Atchison: 405 ½ south side square APT B</u>, <u>Clinton, IL 61727</u> a MALE person whose birth date is on or about <u>05/31/1986</u>, and bring said person without unnecessary delay before <u>Judge Koritz</u> of the Circuit Court of the <u>Sixth</u> Judicial Circuit, <u>DeWitt</u> County, in the courtroom usually occupied by him in the <u>DeWitt</u> County Courthouse in the City of <u>Clinton</u>, or if he is absent or unable to act, before the nearest or most accessible court in said County, to answer a charge made against said person for the offenses of <u>HARASSMENT OF A WITNESS</u> hold said person to bail.    *No Contact with Sarah Zook*

The amount of bail is $ <u>5,000</u> / 10%.
Geographical limit on the execution of this warrant: NO GEOGRAPHICAL LIMIT
ISSUED AT _____<u>DE WITT</u>_____ COUNTY, ILLINOIS, this
<u>7</u> Day of <u>Dec</u>, 2020.

_____
JUDGE

*PR Bond*

---

STATE OF ILLINOIS    )
) ss.
COUNTY OF DE WITT    )

## RETURN OF SERVICE

I have executed the within Warrant by arresting the within-named defendant. In accordance with the provisions of 725 ILCS 5/110-9, Illinois Compiled Statutes, defendant release on bail in sum of $_____, with security: _____

(Description of Security)

(Surety:_____    _____
(Name)    (Address)

this _____ day of _____, _____, to appear in court on _____ the
day of _____, at _____.M. o'clock, Central _____ Time.
(Standard or Daylight)

FEES: Service and Return $____; Mileage(____mi.@___¢)$____;TOTAL:$_____.

_____
(Signature)

_____
(Official Capacity)

## EXHIBIT A



## ADMONITION REGARDING BAIL HEARING

Name of Accused: **Atchison Thomas J**

Arrest Charges: **Harass Witness, Poss Amt Con Sub Except (A)/(D)) Possession of meth/c 5 grams**

Date and time of detention **12/9/2020** at **1345** [am] (pm)

SECTION 1:

[ ] You have been detained pursuant to an arrest warrant issued upon the filing of formal charges or PTR in DeWitt County Case No._____. The judge has already found probable cause and set bond. You will be brought before a judge for arraignment on the next available court date. At that time, you may request a rehearing to determine bond. (Disregard Section 3 below).

SECTION 2: The above-named individual's formal or arrest charges:

[X] do include a Category A offense; or
[ ] includes Category B offenses only (i.e. does not include a Category A offense).

SECTION 3: The court will determine your bond within 48 hours. You have the right to have an attorney present at the hearing to determine your bond. You may hire an attorney of your choice or you may ask the court to appoint an attorney to represent you for purposes of the bond hearing only (If charges are filed, you may later request a court-appointed attorney to represent you on your charges).

I choose to:

[X] Represent myself at the bond hearing.

[ ] Request court-appointed counsel for purposes of the bond hearing.

[ ] Hire my own attorney to represent me at the bond hearing. I understand that if I choose to hire my own attorney to represent me at the bond hearing, then the judge may determine bond within 48 hours without a hearing. The court will then hold a rehearing to determine bond immediately upon the request of my attorney or on the next day court is in session if I later request court-appointed counsel for the bond hearing or choose to represent myself.

Note:

1. If you choose to represent yourself at the bond hearing, you are not prevented from later hiring an attorney of your choice or asking for a court-appointed attorney.
2. If you are being detained on charges that do not include a Category A offense, then the amount of cash deposit you must post to secure your release will be reduced by $30 for each day you remain in custody without posting bond. You will remain obligated to pay the applicable bond fee.

I have read this form and understand the admonitions contained herein.

Date **12-9-20**    Signature _____

NOTE ON USE OF FORM: If Section 1 applies (Defendant arrested pursuant to arrest warrant on initial charge or PTR), then this completed form shall be provided to the SAO who shall then file with the court. THIS FORM IS NOT REQUIRED FOR FTA WARRANTS OR OUT-OF-COUNTY WARRANTS.

Revised

**EXHIBIT A**

# DeWitt County Sheriff's Office
## 101 W Washington St.
## Clinton, IL  61727
PHONE: 217-935-3196      FAX: 217-935-3606

| | | | |
|---|---|---|---|
| **NAME:** | Atchison, Thomas J | **BOOKING#:** | 1-20-000370 |
| **ADDRESS:** | ▮▮▮▮▮▮▮▮ | **BOOK DATE:** | 12/09/2020 |
| | ▮▮▮▮▮▮ | **BOOK TIME:** | 1523 |
| **PHONE:** | ▮▮▮▮▮▮ | **WORK:** | **BOOK OFFICER:** Vaughn, Misty M |
| **NAME#:** | 6241 | **SEX:** M | **EDIT DATE:** |
| **DOB:** | ▮▮▮▮▮ | **SSN:** ▮▮▮▮ | **EDIT TIME:** |
| **POB:** | Pontiac | **ST: IL   RES STAT:** 5 | **EDIT OFFICER:** |
| **OL#:** | ▮▮▮▮▮ | **ST: IL   EXP:** | **SEARCH DATE:** 12/09/2020 |
| **STATUS:** | Active | **MARITAL:** D | **SEARCH TIME:** 1523 |
| **HEIGHT:** | 5' 7" | **WEIGHT:** 165 | **SEARCH OFF:** Becker, Joshua S |
| **AGE:** | 34 YRS | **EDUCATION:** 12 | **SEARCH TYPE:** PAT  Pat Down |
| **RACE:** | W | **CHILDREN:** 5 | **CELL:** ED       **BED:** |
| **HAIR COL:** | BLK | **EYE COL:** BLU | **EMPLOYER:** Unemployed |
| **COMPLXN:** | | **BUILD:** | **ADDRESS:** |
| **HAND USE:** | | **TEETH:** | |
| | | | **PHONE:**            ,        **POSITION:** UNE |
| | | | **NCIC #:** |
| | | | **STATE #:** |
| **BODYMARK:** | | | **FBI #:** |
| **BODYMARK:** | | | **INTERFACE#:** |
| **MARKS:** | | | |
| **AUTHORITY FOR HOUSING:** | | | |
| **COMMENT:** | | | |

Mug Shot Date & Time 08/27/2020  2052
I:\Camera Photos\Atchison, Thomas.JPG          I:\Camera Photos\Atchison, Thomas (2).JPG




Printed: 12/09/20  2012    *INTERSLam Copyright © EmergiTech Inc. All rights reserved.*          Page:          1



**EXHIBIT A**




# Arrest / Charge / Hold Info
## DeWitt County Sheriff's Office

**Inmate Info**

**Name:** Atchison, Thomas J　　　　**Sex:** M　　　　**Booking#:** 1-20-000370

**DOB:** ▆▆▆▆▆▆　　　　**SSN:** ▆▆▆▆▆▆　　　**Booked At:** 12/09/2020 1523

## ARREST INFORMATION

**ARREST DATE:** 12/09/2020　**TIME:** 1345　**MULTI:** Not Applicable　　**TYPE:** Warrant Local

**WARRANT:** 20-CF-97　　**LOCAL ARREST#:**　　　　**INTERNAL ARREST#:**

**ARREST AGENCY:** DeWitt County Sheriff's Office　　　**OFFICER:** Becker, Joshua S

☐ AFOA

**DISPOSITION:**　Lodged At DCSO　　　　　　　**DISP DATE:**

## CHARGE INFORMATION

| Counts | Offense Class Code | Degree | Description |
|--------|-------------------|--------|-------------|
| 1 | 0011368 | Felony Class-2 | HARASS WITNESS |
| | Court Date/Type: | 12/10/2020　DeWitt County Court | |
| | Bond Amount/Type: | $5,000.00　Cash Bond | |
| 1 | 5101110 | Felony Class-4 | POSS AMT CON SUB EXCEPT(A)/(D) |
| | Court Date/Type: | 12/10/2020　DeWitt County Court | |
| | Bond Amount/Type: | $0.00　No Bond | |
| 1 | 0013997 | Felony Class3 | POSSESSION OF METH< 5 GRAMS |
| | Court Date/Type: | 12/10/2020　DeWitt County Court | |
| | Bond Amount/Type: | $0.00　No Bond | |

|   |   |
|---|---|
| 3 | **Charges Printed** |
| 0 | **Holds Printed** |



INTERSLam Copyright © EmergiTech Inc. All rights reserved.

**EXHIBIT A** 

**Page:** 1
Printed: 12/09/2020　2012



Transcript of **Thomas Atchison**

Thursday, April 24, 2025

*Thomas Atchison v. Scroggin*

www.TP.One
800.FOR.DEPO (800.367.3376)
Scheduling@TP.One

Reference Number: 154067

**EXHIBIT B**

```
 1    STATE OF ILLINOIS     )
                            )    SS.
 2    COUNTY OF C O O K     )

 3        IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
 4

 5    THOMAS ATCHISON,            )
                                  )
 6            Plaintiff,          )
                                  )
 7     vs.                        )    No.
                                  )    3:2023-cv-03190-JES
 8    SCROGGIN, et al.,           )
                                  )
 9            Defendants.         )
                                  )
10
          DISCOVERY DEPOSITION VIA ZOOM OF
11                THOMAS ATCHISON
            24th day of April, 2025
12                1:00 P.M.

13        Called as a witness by the Defendants

14    herein, pursuant to the provisions of the

15    Code of Civil Procedure of the State of

16    Illinois and the Rules of the Supreme

17    Court thereof pertaining to the taking of

18    depositions for the purpose of discovery,

19    before GLORIA APOSTOLOS SIOLIDIS, C.S.R.,

20    License #084-001205, a Notary Public duly

21    qualified and commissioned for the State

22    of Illinois.

23

24
```



Scheduling@TP.One          **EXHIBIT B**  800.FOR.DEPO
www.TP.One                               (800.367.3376)

3:23-cv-03199-MMM    #45    Filed 10/07/25    Page 36 of 88

```
 1    PRESENT:

 2

 3         MR. THOMAS ATCHISON,

 4              appeared pro se.

 5

 6         IFMK LAW, LTD., by
           MR. KYLE R. MOORE
 7         650 Dundee Road
           Suite 475
 8         Northbrook, IL    60062
           (847)291-0200
 9         kmoore@ifmklaw.com

10              appeared on behalf of the Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```





EXHIBIT B    800.FOR.DEPO
(800.367.3376)

1      MR. MOORE:  Swear him in, please.

2      THE COURT REPORTER:  Raise your

3 right hand, please.

4           (The oath was thereupon duly

5            administered to the witness by

6            the Notary.)

7           THOMAS ATCHISON,

8 Called as a witness by the Defendants

9 herein, having been first duly sworn, was

10 examined and testified as follows:

11           EXAMINATION

12           By:  Mr. Moore

13   Q  Mr. Atchison, we already met this

14 morning.  I'm one of the attorneys that

15 represent the DeWitt County defendants.

16 We already covered a lot of the ground

17 rules again this morning, so I will not

18 reiterate them or go back over your

19 general background.  However, you are

20 aware that you are still sworn in to tell

21 the truth, correct?

22   A  Yes, sir.

23   Q  On May 31st, 2023, you filed a

24 Complaint against Andrew Scroggin and


TP.One
Court Reporting

Scheduling@TP.One
www.TP.One

EXHIBIT B

800.FOR.DEPO
(800.367.3376)

3:23-cv-03190-MMM   #45   Filed: 10/10/25   Page 38 of 88

1   Misty Vaughn, case caption Thomas

2   Atchison versus Andrew Scroggin, 23 CV

3   3190, where you alleged the Fourth

4   Amendment for your claim; is that

5   correct?

6     A  I mean that's basically correct.

7   The only thing is during that time, the

8   law library here in Auburndale was down

9   because inmates were getting Fentanyl in

10  the mail and they were drugging deals

11  with it. ^ Check this

12      So the mail was down for almost

13  three weeks at that time.  And the date

14  that I wrote that Complaint is the date

15  that I sent that to the law library.  So

16  I mean I understand that it wasn't

17  file-stamped until the 31st, but I did

18  attempt to file it before that two-year

19  deadline.

20    Q  I understand.  Who is Andrew

21  Scroggin?

22    A  He was the CO that was employed by

23  DeWitt County Jail while I was

24  incarcerated there.



EXHIBIT B



3:23-cv-03199-MMM   #451   Filed 10/10/25   Page 39 of 88

1    Q   What was his involvement at the

2    jail?

3    A   Just correctional security.

4    Q   And then who is Misty Vaughn?

5    A   She was the CO when I first started

6    going to the jail, but then she became

7    the jail administrator.

8    Q   And then what is her involvement

9    with the jail?

10   A   To my knowledge, she administers

11   discipline to correctional staff.  She

12   hires them for their jobs.  I believe she

13   answers most of the grievances.  And she

14   handles most of the affairs that go on at

15   DeWitt County Jail.  She's the jail

16   administrator.

17   Q   Thank you.  And then who is

18   Alexander Davis?

19   A   He is the individual who assaulted

20   me.

21   Q   When did you first meet Mr. Davis?

22   A   It was, we had verbal altercations

23   in 2020, but I never really met him

24   face-to-face until October of 2020.



Scheduling@TP.One
www.TP.One

EXHIBIT B



800.FOR.DEPO
(800.367.3376)

3:23-cv-00399-MMM   #451   Filed 10/10/25   Page 40 of 88

1    Q   Okay.  So October, 2020, that was

2    the first time you met Mr. Davis,

3    correct?

4    A   Face-to-face, yes, sir.  But we had

5    verbal altercations before that through

6    DeWitt County Jail doors.  Like our pods

7    were right next to each other and there's

8    doors that separate each pod and you can

9    talk through them to the inmates in the

10   other pod, and we had verbal altercations

11   through that door.

12   Q   And what were those verbal

13   altercations?

14   A   I mean he basically threatened me,

15   if he ever caught up with me he was going

16   to beat my ass is what he said.  And we

17   just argued about stupid stuff.

18   Q   Why do you believe he was making

19   those I guess assaults towards you,

20   verbal assaults towards you?

21   A   I believe he's just a violent

22   person, myself, and he's got anger

23   problems.

24   Q   Did you do anything to provoke him?




1    A   I mean I might have said some things

2  I shouldn't have said, yes.

3    Q   And what were those things?

4    A   I might have called him a cuss word

5  or two.

6    Q   What cuss word?

7    A   I probably called him a bitch.  I

8  don't know.  I might have said something

9  about his mother or something and he

10  threatened me.

11    Q   And what did he threaten you and

12  say?

13    A   He told me if I ever catch up with

14  you, I'm going to beat your ass.

15    Q   Who made the first threat?

16    A   He did.  I never threatened him.  He

17  just threatened me.

18    Q   And when was that first threat made?

19    A   It was in early October of 2020.

20    Q   So help me understand.  So you're

21  walking by his cell within the pod; is

22  that correct?

23    A   No.  The pods are all, they have

24  walk-throughs for the COs at night when




1  they do their counts, so they don't have

2  to go through out the front door of each

3  pod and then go into the front door of

4  the next pod.

5          There's a door that separates

6  each pod kind of like joint hotel rooms,

7  there's a door that separates them that's

8  always locked, but you can talk through

9  it because there's really no weather

10  stripping or anything around it.  You can

11  pass notes through it.

12          You're not supposed to at the

13  DeWitt County Jail, that was one of the

14  rules, but people did it anyways.

15    Q   Okay.  And so where were you headed

16  when you encountered Mr. Davis?

17    A   I was in my pod and he was in his

18  pod.  We were just arguing through the

19  door.

20    Q   Did you see each other?

21    A   No, no.

22    Q   Well, how do you know that it was

23  Mr. Davis who made that threat to you?

24    A   Because he was the only black





3:23-cv-03199-MMM   #451   Filed 10/10/25   Page 43 of 88

1   individual in that pod.

2      Q   And how do you know that he was the

3   only black individual?

4      A   Because when you do go to like the

5   law library or stuff or to rec, you can

6   see in those pods, and there was nobody

7   else in there but one other little kid

8   that I knew from the streets.

9      Q   So was there anything that was said

10   that made you identify that it was a

11   black individual that had made the

12   threats towards you?

13      A   I mean he called me a cracker and

14   just the kind of voice he has, I mean it

15   wasn't a white person's voice.

16      Q   So this is your assumption without

17   seeing who it actually was, correct?

18      A   Well, then I did see him.  I was

19   going to rec or to the law library, and

20   that's when I put two and two together.

21      Q   When he made the comment that you

22   were a cracker, did you say any racist

23   commentary back to Mr. Davis?

24      A   No.  I sarcastically said Assalamu





1  Alaikum.  And he said Alaikum back to me

2  and that was it.

3     Q   Was there a religious purpose for

4  this statement?

5     A   No.  I mean there was not.  It was a

6  stupid thing.  I shouldn't have said it.

7     Q   What does it mean?

8     A   What does it mean?  I'm not quite

9  sure.  I think it means peace and

10  blessings upon you or something like

11  that, or may peace be upon you.

12     Q   And this was after the threatening

13  comments; is that correct?

14     A   Yes, sir.

15     Q   So after the threatening comments,

16  you said may peace be upon you and he

17  said what in response?

18     A   He said Alaikum Shalom which I'm not

19  Muslim, so I don't know what it means, to

20  be honest.

21     Q   Okay.  Is there anything else that

22  gave you the indication that you were

23  speaking to a black individual through

24  the wall?



1    A  The person I was housed with, Justin

2  Smith, told me that he had got into an

3  argument with him as well and that he was

4  a black individual.  And he told me what

5  he was in the County for.  And we would

6  see him go out.

7        He had insulin checks or sugar

8  tests or whatever for people -- he was

9  diabetic, so he would go out several

10  times a day to the desk and everybody

11  could see who he was.

12    Q  And then so who is Justin Smith?

13    A  He was somebody that was in the

14  County Jail when I was there in October.

15  I forget how long he stayed after that,

16  but he took a plea deal for his case and

17  he ended up coming to the prison.

18    Q  And then how do you know Justin

19  Smith?

20    A  I've known him since I was like 12

21  or 13 years old.  We went to the same

22  school together.

23    Q  And how did he convey to you that

24  there was a black individual within his




1  pod?

2    A  He was within the next pod over.  He

3  wasn't in his pod.  Justin Smith was in

4  my pod.

5            But he told me that he got into

6  an argument with the guy before.  And

7  then he told me what he was locked up

8  for.  He told me who he was.

9            Actually, after I ended up

10 being housed with Alexander Davis we got

11 to talking and stuff and I actually hung

12 out with his brother on a few occasions.

13 And I told me where his sister lived.  I

14 used to go to his sister's house and hang

15 out with his brother now and then, so I

16 knew who he was.

17   Q  Is this Mr. Davis' older or younger

18 brother?

19   A  I believe it was his younger

20 brother.

21   Q  And then what was his brother's

22 name?

23   A  I forget his brother's name.  We

24 didn't call each other by our real names.




1    Q   What did you call him?

2    A   I don't remember, sir.  It was so

3    long ago.  I only hung out with him a

4    couple times.

5    Q   And then what about his sister?

6    A   I never asked her her name.  I only

7    met her one time.

8    Q   Where was their residence located

9    at?

10   A   It was right across the street

11   from -- it was actually right down the

12   street from the jail on the same road,

13   right across the parking lot from the

14   First Christian Church.

15   Q   So when were you moved to the same

16   pod with Mr. Davis?

17   A   On October 24th of 2020.

18   Q   Was there a reason that you were

19   moved?

20   A   At the time I didn't think there was

21   a reason, but later I found out that one

22   of the COs said they overheard me and

23   Justin Smith talking about locks or

24   picking locks or something.  He said he



1  couldn't hear us very clearly, but I

2  guess for the safety of the institution,

3  they wanted to move me away from Justin

4  Smith.

5           And Andrew Scroggin's came and

6  told me to pack my stuff up on that date

7  and that I was moving in from -- I was

8  going to move from D pod into C pod.  And

9  I told him I said look, there's a guy in

10  there that if you put me in there, we're

11  going to get in a fight.

12           I said please don't put me in

13  there.  And he told me, he said you're

14  going to move in there or you're going to

15  go to Seg.  That's your choices.  So I

16  chose to go to C pod.

17    Q  Were you upset about then being

18  moved to C pod?

19    A  Yes, sir.

20    Q  And you were upset at the

21  correctional officers?

22    A  Correct.

23    Q  What correctional officer or

24  officers were that?




3:23-cv-03190-MMM   #45   Filed 10/10/25   Page 49 of 88

1   A  It was Andrew Scroggin and I forget

2  who else was working.  I think it was

3  Joshua Becker was working as well.

4   Q  Why did you tell the COs that you

5  would get into it with Mr. Davis before

6  you had even encountered him?

7   A  Because of his threatening comments

8  to me.

9   Q  And as you sit here today, you don't

10  recall any threatening comments that you

11  made towards Mr. Davis?

12   A  No, sir.

13   Q  You mentioned that Justin Smith

14  stated that Mr. Davis had previously

15  gotten into it with another inmate.  Who

16  was that inmate?

17   A  He told me that he had an argument

18  with him as well, Justin Smith did.

19   Q  Who, Justin Smith?

20   A  Correct.  Also, I know from being

21  housed with Alexander Davis, that he got

22  into a fight with Joshua Park and he

23  broke Joshua Park's nose as well.  And I

24  witnessed that whole altercation.




3:23-cv-03990-MMM   #451   Filed 10/01/25   Page 50 of 88

1    Q   How long were you housed with

2   Mr. Davis before the alleged assault?

3    A   Well, so here's what happened.   I

4   was housed with him for I believe one or

5   two months and then I ended up posting

6   bond.   And then it was during that time

7   is when he broke Joshua Park's nose.

8           And after I bonded out, I was

9   again arrested on some more charges and I

10  came back to the DeWitt County Jail and

11  Andrew Scroggin was my booking officer.

12  He's the one that booked me in.   And he

13  told me he was going to put me back in

14  with Alexander Davis.

15          I begged him again not to put

16  me back in there because me and him

17  didn't get along, and he said that's the

18  only place we're going to put you, or you

19  can go to Seg.   That's what he said.   So

20  I had no choice but to go back into a pod

21  with this individual.

22   Q   When was that?

23   A   Off the top of my head, I don't

24  know.   I passed out walking over there





1  and it's a long walk, so I really

2  couldn't carry anything with me.  But

3  it's in, all my arrest records are in the

4  discovery.

5    Q  Okay.  So you mentioned earlier that

6  you were moved to C pod on October 24th,

7  2020 and then you bonded out a couple of

8  months later?

9    A  One or two months, yes, sir.

10    Q  One or two months later.  And then

11  you came back would you say within a

12  month or two months of that?

13    A  Well, I know I was only -- since

14  2016, I was only on the streets four

15  months, three months and then two weeks,

16  so it was one of those times.

17    Q  Would you say that you were back in

18  the DeWitt County Jail prior to January?

19    A  I believe so.  Maybe not though.  I

20  don't really recall, sir.  It's all in

21  the discovery.  It's all in my arrest

22  reports.

23    Q  Okay.  And then what day did the

24  assault take place?




1    A   The assault took place on May 28th,

2    2021.

3    Q   What led up to the assault?

4    A   I really don't even want to talk

5    about it.  It was so stupid.  But I mean

6    it was over Taylor swift.  He kept

7    badmouthing Taylor swift and I told him

8    that she's an angel.  I told him she does

9    so much for this world.  The iHeartRadio

10   Music Awards came on the night before and

11   he was talking trash about her.

12          And then she came on the next

13   morning on CMT.  We would rotate the TV

14   schedule.  He would watch something, then

15   I would watch something.  So every

16   morning I would watch the Hot 20

17   Countdown and he started talking about

18   Taylor swift again.

19          And he said something like oh,

20   she sounds like shit and then he said she

21   doesn't have no tits or ass.  And I told

22   him, I said look man.  I said she's an

23   angle.  Why do you keep talking trash

24   about her?  She literally does so much




3:23-cv-03199-MMM    #451    Filed 10/10/25    Page 53 of 88

```
1    for this world and you're just sitting
2    there getting down on her.
3            I said you don't even know her
4    and then I quoted some scripture.  I
5    forget where it's at in the Bible but I
6    said something like, any man that can't
7    bite his tongue is wrong in all his ways.
8    And I told him I said basically you're
9    not even a man if you can't control your
10   tongue.
11           So he pushed me down on the
12   floor with his hand on my face.  I got up
13   and I said you're nothing but a bitch,
14   dude.  And then he punched me right here
15   in my jaw.
16     Q  Okay.  And then before this argument
17   about Taylor Swift, had you guys had any
18   issues in the pod?
19     A  I mean we would have arguments,
20   yeah, but there was nothing ever
21   physical, no.
22     Q  Did you communicate any issues with
23   Alexander Davis to Misty Vaughn?
24     A  Just when he physically assaulted
```




3:23-cv-03190-MMM   #451   Filed: 10/10/25   Page 54 of 88

1   me.  As soon as he assaulted me, they

2   brought us breakfast trays and I told

3   both COs, Scroggin and Joshua Becker, I

4   said you've got to get me out of here.  I

5   said he just put his hands on me.

6           So they separated us.  They put

7   me in a watch cell.  They moved him to A

8   pod and talked to both of us.  And he

9   admitted that he -- he didn't admit that

10  he punched me, he said he buffed me in my

11  face, but I'm pretty sure it was all on

12  camera.  I know there was a camera

13  pointed directly at our pod.

14          And they found him guilty.  I

15  told them then.  I said I don't want him

16  to do but maybe three days in Seg.  I

17  said he's just got an anger problem and I

18  don't think he should do that long in

19  Seg.  I said I don't got nothing against

20  the guy, but he's got anger problems.

21          They asked me three times if I

22  wanted to press charges on him.  I said

23  no, I don't want to press charges on him,

24  that's only going to be more time in





Scheduling@TP.One
www.TP.One

EXHIBIT B

800.FOR.DEPO
(800.367.3376)

1  prison and it's going to be an aggravated

2  assault because it happened in county

3  jail.  So you guys are going to give him

4  at least five years in prison for that

5  and I said no, there's no need for that.

6  So I didn't want him to get in any

7  serious trouble, but he does have an

8  anger problem.

9     Q  How much time did he spend in

10  segregation?

11     A  I think he spent either 15 or

12  30 days in Seg for it.

13     Q  Okay.  We're going to take a

14  15-minute break here.  And then we'll get

15  back on the record around 1:30.  Okay?

16     A  Okay.

17             (There was a discussion held

18              off the record, after which

19              the deposition resumed as follows:)

20     MR. MOORE:  Going back on the record

21  at 1:28 P.M.

22  BY MR. MOORE:

23     Q  What I'm going to now show you which

24  is being marked as Exhibit A, is body




```
1   camera footage previously produced to

2   you.  Bates DC 1212.

3            (The document was so marked by

4             the court reporter.)

5   BY MR. MOORE:

6     Q  Can you see this video?

7     A  Yes, sir.

8     Q  Now, I'm going to ask you some

9   questions.  I'll play it here in a second

10  and ask you some questions and you just

11  let me know if you recall this interview.

12    A  Okay.

13    Q  All right.  I'm going to pause it

14  here.  Again, this is May 28th, 2021.

15  The video is time stamped here at 07:21

16  and 44 seconds.

17            (Video playing.)

18  BY MR. MOORE:

19    Q  Mr. Atchison, is that you on the

20  screen?

21    A  Yes, sir.

22    Q  Do you recall being interviewed

23  after the alleged assault on May 28th?

24    A  Yes, sir.  That was inside.  After
```





EXHIBIT B

800.FOR.DEPO
(800.367.3376)

1   the assault they moved me to the watch

2   cell and they separated us.

3      Q   Who is it that interviewed you in

4   this video?

5      A   Who is it that interviewed me?

6      Q   Yes.

7      A   I spoke with Andrew Scroggin and he

8   spoke with Joshua Becker and Misty

9   Vaughn.

10     Q   Okay.  I'm playing the video again

11  here at 7:21:45.

12           (Video playing.)

13  BY MR. MOORE:

14     Q   All right.  Pausing the video again

15  here at 7:22 and ten seconds.  Now, would

16  you be able to hear that?

17     A   Not really, sir.  No, sir.  It's

18  running slow, so I mean I don't what's

19  going on with it.

20     Q   Okay.  I will go back and play it

21  again and I'll turn my volume up to see.

22  You may have to turn the volume up on

23  your end.  But I'll go back.  And then

24  when I pause it, let me know again if you




1  have any issues hearing the video.

2    A  Okay.

3          (Video playing.)

4  BY MR. MOORE:

5    Q  Okay.  I'm pausing it again here at

6  7:22 and 11 seconds.  Were you able to

7  hear that this time, Mr. Atchison?

8    A  No, sir.  It still is running slow.

9  It's like on slow speed or something.  I

10  mean I can here what they are saying, but

11  I can't make out everything because it's

12  running on like a slow speed.

13          I don't know if it's on your

14  end or my end.  I don't have access to

15  any of these controls.  I'm handcuffed to

16  a table.

17    Q  Okay.  Did you hear yourself in this

18  video stating that Mr. Davis was mouthing

19  off about Taylor Swift?  Were you able to

20  hear that?

21    A  I got that part.  What I'm saying I

22  can basically make out what I'm saying,

23  but I can't hear what the CO is saying.

24  Like I said, it's running on slow speed,




1   so --

2      Q   Okay.  Did you hear yourself say

3   that you then told Mr. Davis, "Shut up,

4   she's a fucking angel?"

5      A   Yeah.  Yeah, I think I did say that,

6   yeah.

7      Q   Okay.  And then we'll begin playing

8   the video again here at 7:22:11.

9              (Video playing.)

10  BY MR. MOORE:

11     Q   Okay.  Stopping the video again at

12  7:22:18.  Did you hear yourself state in

13  this video that it was nothing serious?

14     A   No.  It's running on slow speed, so

15  I can't really make everything out, sir.

16     Q   Okay.

17     A   I may have said it.  If I said it,

18  then I said it.  I mean --

19     Q   Okay.  Did you hear yourself say

20  that you and Mr. Davis argue and play all

21  the time?

22     A   I know I did say that, yes, sir.  I

23  didn't hear it when you just played it,

24  but I know I did say that, yes, sir.


TP.One
Court Reporting
Scheduling@TP.One
www.TP.One

EXHIBIT B
800.FOR.DEPO
(800.367.3376)

3:23-cv-03399-MMM   #451   Filed 10/10/25   Page 60 of 88

1    Q   Okay.  Playing the video again at

2    7:22:18.

3                (Video playing.)

4    BY MR. MOORE:

5    Q   Okay.  Stopping it again at 7:22:38.

6    Did you hear yourself again say, "Bro,

7    shut up, she's a fucking angel?"

8    A   I did not hear that.  Like I said,

9    it's playing super slow on my end, so I

10   may have said it.  I don't know.

11               I did see this video when you

12   guys sent it to me.  I saw this video and

13   a couple other videos.  There was only

14   three videos total that they let me see.

15   But I recall when I watched this video on

16   their computer as well and it was also

17   playing slow and I couldn't get it fixed.

18   So I don't know.

19   Q   Okay.  You mentioned something on

20   the video about CMT.  Were you the one

21   that was actually watching CMT?

22   A   Right.  We both watched it every

23   morning.  That was one of the shows that

24   I picked, we both watched it.  We both



Scheduling@TP.One
www.TP.One



800.FOR.DEPO
(800.367.3376)

1  watched each other's shows because there

2  was only one TV in the pod.

3    Q  How many individuals were in your

4  pod at the time?

5    A  Just me and Mr. Davis were in that

6  pod at this time.

7    Q  Would you say you and Mr. Davis

8  talked a lot during this time?

9    A  I mean yeah, we talked every day,

10  yeah.  I mean we were the only two in the

11  pod together, so I mean we tried to keep

12  each other sane.  You know what I'm

13  saying?

14        I already told you, I don't

15  have any animosity toward this guy.  We

16  got along for the most part.  But he's

17  got an anger problem.  And I notified

18  jail staff about it and they are well

19  aware of it.

20    Q  How long were you and Mr. Davis in

21  the pod together?

22    A  I don't recall an exact amount of

23  time.

24    Q  Were you and Mr. Davis the only one




3:23-cv-00319-MMM   #451   Filed 10/10/25   Page 62 of 88

1   in the pod together from what you recall?

2     A   On this date, yes, sir.

3     Q   Okay.

4     A   We were in another pod together with

5   several other individuals before I bonded

6   out.  But when I came back, it was just

7   me and him in that pod on this date,

8   particularly.

9     Q   The first time you were in the pod

10   with Mr. Davis before you bonded out, did

11   you and Mr. Davis have conversations

12   then?

13     A   Very rarely.

14     Q   What was the nature of the

15   conversations that you and Mr. Davis had

16   after you were returned to the DeWitt

17   County Jail?

18     A   We would talk about God a lot, about

19   religion, about the Bible.  He liked

20   watching all the wrestling shows like WWE

21   and all that stuff.  He liked talking

22   about that stuff.

23             We talked about sports every

24   now and then.  We talked about music.  I



3:23-cv-03199-MMM   #451   Filed 10/10/25   Page 63 of 88

1   mean we were the only two in the pod

2   together, so we had to be cordial with

3   each other for the most part, you know?

4       Q   Going back to the video here at

5   7:22:38.

6               (Video playing.)

7   BY MR. MOORE:

8       Q   All right.  Pausing the video again

9   here at 7:23:07.

10              From the video it sounds to me

11  that Mr. Davis became upset about your

12  opinion that he was a negative

13  individual.  Is that also your position?

14      A   Yes, sir.

15      Q   Playing the video again here at

16  7:23:13.

17              (Video playing.)

18  BY MR. MOORE:

19      Q   All right pausing the video again at

20  7:23:27.

21              It's my understanding that

22  after you made your opinion and your

23  statements about Taylor Swift to

24  Mr. Davis, he then pushed you in the





EXHIBIT B

800.FOR.DEPO
(800.367.3376)

1   face; is that correct?

2     A  Correct, sir.

3     Q  Did he strike you again after

4   pushing you in the face?

5     A  After I stood up, I believe I called

6   him a bitch and that's when he punched me

7   in my jaw.

8     Q  Did anything else happen after he

9   punched you in the jaw?

10    A  No, because the COs were right there

11  and they opened the door to give us our

12  breakfast, or opened the shut hole to

13  give us our breakfast and that's when I

14  told them he just hit me, get me the hell

15  out of here.

16    Q  Okay.  I'm going to stop sharing my

17  screen now.

18          At any point, did you submit a

19  written grievance requesting to be moved

20  away from Mr. Davis?

21    A  No, because they already told me

22  that I was going to be in that or go to

23  Seg, so.  And there was a grievance

24  before that I wrote and they got all on





1   my butt about asking to wear my tie.

2   They wanted me to wear my suit at my

3   trial at certain hearings, but they

4   refused to let me wear my neck tie.

5           And I wrote a grievance on that

6   and they jumped all down my throat about

7   it.  So I didn't write grievances about

8   things that they already told me no on.

9           There is an inmate shift

10   message login entry by Andrew Scroggin on

11   the date that he made me move, and in

12   there he stated why he moved me and that

13   we had a conversation.  And that he

14   basically forced me, he's saying I could

15   go in that pod or go on lockdown.  So

16   that's the only paperwork I have about

17   any of those conversations.

18       MR. MOORE:  Okay.  I'm going to move

19   to strike that testimony as there was no

20   question pending.

21   BY MR. MOORE:

22     Q  Mr. Atchison, if this case proceeds

23   to trial, are there any witnesses who

24   could testify in support of your claims?





1    A  All the named defendants.  Alexander

2    Davis and Joshua Park who witnessed the

3    altercation from his pod.  Also, Dr.

4    Lochard can testify about my medical

5    treatment after this incident.

6    Q  Do you know where Joshua Park --

7    strike that.  Where is Joshua Park's

8    current address?

9    A  I have no idea, sir.  I'm assuming

10   he's in the Illinois Department of

11   Corrections somewhere though.

12   Q  Have you communicated with him since

13   leaving the DeWitt County Jail?

14   A  No, sir.

15   Q  Did you suffer any physical injury

16   as a result of Mr. Davis' alleged

17   assault?

18   A  Yes, sir.

19   Q  What physical injury did you suffer?

20   A  My wrist hurt for several weeks.  My

21   head when he punched me, I fell backwards

22   on my wrist to try to catch myself and I

23   also hit my head on the concrete.  And my

24   jaw hurt for several weeks as well, sir,

 TP.One
Court Reporting

Scheduling@TP.One
www.TP.One

EXHIBIT B

800.FOR.DEPO
(800.367.3376)


1   and it was swollen.

2     Q   Did the correctional officers

3   contact any medical provider?

4     A   They did, by phone Dr. Lochard

5   prescribed and ice-pack.  And then I

6   think the next day or the day after that

7   he saw me and I believe he gave me some

8   pain medicine and just the ice pack and

9   he said to stay hydrated and well rested.

10    Q   Did he make any diagnosis as to any

11  sprained wrist or broken jaw or anything

12  like that?

13    A   No.  I never had an X-ray.  I asked

14  for an X-ray.  I asked for them to check

15  into see if I had a concussion.  Nothing

16  was done about that.

17          I asked for an X-ray on my jaw

18  because it felt like it was broken.  They

19  refused to give me an X-ray.  But I mean

20  there's plenty of medical records that

21  show that there was swelling on the jaw

22  and that he prescribed things from this

23  incident.

24    Q   And you didn't want to press any




1  charges against Mr. Davis; is that

2  correct?

3    A  That's correct.

4    Q  Do you possess any documents related

5  to your claims in this lawsuit?

6    A  Just what you provided me.

7    Q  Did anyone assist you with filling

8  out or drafting this Complaint?

9    A  Yes, sir.  The same individual that

10  assisted me in drafting the previous

11  Complaint that we spoke about.  And

12  again, I don't recall his name.  We

13  called him Mike.  He was my neighbor for

14  about three months in the east house.

15  And I haven't seen him since.

16    Q  Did you ever submit any written

17  complaints about Andrew Scroggin or Misty

18  Vaughn alleged constitutional violations

19  to any other governmental agencies?

20    A  No, sir.  Just on the grievance

21  procedure, sir.

22    Q  Did you ever submit any written

23  complaints about Andrew Scroggin or Misty

24  Vaughn to any non-profits or community



1  groups?

2    A   Just requesting counsel.

3    Q   Did you ever talk to any friends or

4  family members about your claims?

5    A   Just the same as before, my parents

6  and my four sons.

7    Q   And then what was the subject of

8  those conversations?

9    A   Well, I needed the money to pay the

10  filing fees, so I told my parents what it

11  was about.  And I told them what my

12  finances were and they sent me the money

13  for that.

14          And then with my sons, I just

15  talk about the status of what's going on

16  in these two cases, and what could

17  potentially happen.  And the ups and

18  downs of that.

19    MR. MOORE:  Okay.  As mentioned in

20  the previous deposition, you can either

21  waive signature and trust that the court

22  reporter has taken everything down

23  correctly or reserve, in which case the

24  court reporter will arrange for you to




<sup>1</sup> review a copy at the prison that you're

<sup>2</sup> currently incarcerated at and fill out an

<sup>3</sup> errata sheet noting typo errors.  But

<sup>4</sup> again, you can't keep a copy if you do

<sup>5</sup> reserve.  What would you like to do?

<sup>6</sup>      THE WITNESS:  I would like to

<sup>7</sup> reserve.

<sup>8</sup>      MR. MOORE:  You would like to

<sup>9</sup> reserve.  Okay.

<sup>10</sup>      THE WITNESS:  Now, am I allowed to

<sup>11</sup> make a copy of this?

<sup>12</sup>      MR. MOORE:  No, you are not allowed

<sup>13</sup> to make a copy.  The errata sheet is only

<sup>14</sup> to allow you to see errors.  Now if you

<sup>15</sup> do keep a copy, have to pay for the

<sup>16</sup> transcript itself.

<sup>17</sup>           Gloria's company is TP One.  I

<sup>18</sup> can provide you with their information

<sup>19</sup> and Gloria can provide you with their

<sup>20</sup> information as well.  You'll see it too

<sup>21</sup> on the transcript that they give you that

<sup>22</sup> has the errata sheet attached to it.  So

<sup>23</sup> you'll know from that.

<sup>24</sup>      THE WITNESS:  Okay.





 1        MR. MOORE:  I know Gloria mentioned

 2    that we would send that, but it should

 3    come directly from TP One to you.  The

 4    transcript will go directly to you and

 5    again you can review it, note typo

 6    changes but you can't change any of the

 7    substance.

 8

 9

10

11        AND FURTHER DEPONENT SAITH NOT

12

13

14

15

16

17

18

19

20

21

22

23

24



EXHIBIT B

Scheduling@TP.One
www.TP.One


800.FEE.DEPO
(800.367.3376)

3:23-cv-03990-MMM  #451  Filed 10/10/25  Page 72 of 88

```
 1   STATE OF ILLINOIS    )
                          )  SS
 2   COUNTY OF DU PAGE    )

 3        I, GLORIA APOSTOLOS SIOLIDIS,

 4   C.S.R., in and for the State of Illinois

 5   do hereby certify that THOMAS ATCHISON

 6   was first duly sworn by me to testify the

 7   truth; that the above deposition was

 8   recorded in shorthand and reduced to

 9   typewriting by me; that the deposition is

10   a true, correct and complete transcript

11   of the entire testimony given by the said

12   witness at the time and place hereinabove

13   set forth, and that signature is hereby

14   reserved by said witness.

15        I further certify that I am not

16   counsel for, nor in any way related to

17   any of the parties to this suit, nor am I

18   in any way interested in the outcome thereof.

19        In witness hereof, I have hereunto

20   set my hand and affixed my Notarial Seal

21   this 5th day of April, A.D., 2025.

22

23

24   GLORIA APOSTOLOS SIOLIDIS
     CSR License #084-0001205
```



Notice Date: Wednesday, 7. May 2025


Attention: Thomas Atchison



Re:Thomas Atchison v. Scroggin
   Deposition of Thomas Atchison (4/24/2025)


NOTICE REGARDING SIGNING DEPOSITION TRANSCRIPT

The above referenced transcript is available for review.
Within 30 days, or the applicable timeframe of your legal
jurisdiction, the witness may read the testimony to verify
its accuracy. Any changes can be noted on the following
errata page.

Once the transcript has been reviewed, the witness should
sign and date the certificate of deponent page. The signed
certificate, errata, and original transcript (if provided)
must be returned to TP.One per the rules of civil procedure.

If the transcript and errata are not returned within the
allotted time, the unsigned transcript may be used as if
signed by the witness.


Thank you,

TP.One Production Department
Production@tp.one







Deponent Errata Page

Notice Date: 05/07/2025

Deposition Date: 4/24/2025

Deponent: Thomas Atchison

Case Name: Thomas Atchison v. Scroggin

Page:Line            Now Reads              Should Read

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____

_____  _____  _____



**EXHIBIT B**



800.HER.DEPO
(800.367.3376)

3:23-cv-03390-MMM    #451    Filed 10/10/25    Page 75 of 88

CERTIFICATE OF DEPONENT

I hereby certify that I have read and examined the
foregoing transcript, and the same is a true and
accurate record of the testimony given by me.
Any additions or corrections that I feel are
necessary, I will attach on a separate sheet of
paper to the original transcript.


_____

Signature of Deponent

I hereby certify that the individual representing
himself/herself to be the above-named individual,
appeared before me this _____ day of _____,
20__, and executed the above certificate in my
presence.


_____

NOTARY PUBLIC IN AND FOR


_____

County Name

MY COMMISSION EXPIRES:




## WORD INDEX

**< 0 >**
**07:21** 22:*15*
**084-0001205**
*38:23*
**084-001205** 1:*20*

**< 1 >**
**1:00** 1:*12*
**1:28** 21:*21*
**1:30** 21:*15*
**11** 24:*6*
**12** 11:*20*
**1212** 22:*2*
**13** 11:*21*
**15** 21:*11*
**15-minute** 21:*14*

**< 2 >**
**20** 18:*16*
**2016** 17:*14*
**2020** 5:*23, 24*
*6:1 7:19 13:17*
*17:7*
**2021** 18:*2* 22:*14*
**2023** 3:*23*
**2025** 1:*11* 38:*21*
**23** 4:*2*
**24th** 1:*11*
*13:17 17:6*
**28th** 18:*1*
*22:14, 23*

**< 3 >**
**3:2023-cv-03190-JES** 1:*7*
**30** 21:*12*
**3190** 4:*3*
**31st** 3:*23* 4:*17*

**< 4 >**
**44** 22:*16*
**475** 2:*7*

**< 5 >**
**5th** 38:*21*

**< 6 >**
**60062** 2:*8*
**650** 2:*7*

**< 7 >**
**7:21:45** 23:*11*
**7:22** 23:*15* 24:*6*
**7:22:11** 25:*8*
**7:22:18** 25:*12*
*26:2*
**7:22:38** 26:*5*
*29:5*
**7:23:07** 29:*9*
**7:23:13** 29:*16*
**7:23:27** 29:*20*

**< 8 >**
**847)291-0200**
*2:8*

**< A >**
**A.D** 38:*21*
**able** 23:*16* 24:*6,
19*
**access** 24:*14*
**address** 32:*8*
**administered**
*3:5*
**administers** 5:*10*
**administrator**
*5:7, 16*
**admit** 20:*9*

**admitted** 20:*9*
**affairs** 5:*14*
**affixed** 38:*20*
**agencies** 34:*19*
**aggravated** 21:*1*
**ago** 13:*3*
**al** 1:*8*
**Alaikum** 10:*1,
18*
**Alexander** 5:*18*
*12:10 15:21*
*16:14 19:23*
*32:1*
**alleged** 4:*3*
*16:2 22:23*
*32:16 34:18*
**allow** 36:*14*
**allowed** 36:*10,
12*
**altercation**
*15:24 32:3*
**altercations**
*5:22 6:5, 10, 13*
**Amendment** 4:*4*
**amount** 27:*22*
**Andrew** 3:*24*
*4:2, 20 14:5*
*15:1 16:11*
*23:7 31:10*
*34:17, 23*
**angel** 18:*8* 25:*4*
*26:7*
**anger** 6:*22*
*20:17, 20 21:8*
*27:17*
**angle** 18:*23*
**animosity** 27:*15*
**answers** 5:*13*
**anyways** 8:*14*
**APOSTOLOS**

**1:19** 38:*3, 23*
**appeared** 2:*4, 10*
**April** 1:*11*
*38:21*
**argue** 25:*20*
**argued** 6:*17*
**arguing** 8:*18*
**argument** 11:*3*
*12:6 15:17*
*19:16*
**arguments** 19:*19*
**arrange** 35:*24*
**arrest** 17:*3, 21*
**arrested** 16:*9*
**asked** 13:*6*
*20:21 33:13, 14,
17*
**asking** 31:*1*
**ass** 6:*16* 7:*14*
*18:21*
**Assalamu** 9:*24*
**assault** 16:*2*
*17:24 18:1, 3*
*21:2 22:23*
*23:1 32:17*
**assaulted** 5:*19*
*19:24 20:1*
**assaults** 6:*19, 20*
**assist** 34:*7*
**assisted** 34:*10*
**assuming** 32:*9*
**assumption** 9:*16*
**ATCHISON** 1:*5,
11* 2:*3* 3:*7, 13*
*4:2 22:19 24:7*
*31:22 38:5*
**attached** 36:*22*
**attempt** 4:*18*
**attorneys** 3:*14*
**Auburndale** 4:*8*
**Awards** 18:*10*





EXHIBIT B
800.FLA.DEPO
(800.367.3376)

aware 3:*20*
27:*19*

**< B >**
**back** 3:*18* 9:*23*
10:*1* 16:*10, 13,*
*16, 20* 17:*11, 17*
21:*15, 20* 23:*20,*
*23* 28:*6* 29:*4*
**background**
3:*19*
**backwards**
32:*21*
**badmouthing**
18:*7*
**basically** 4:*6*
6:*14* 19:*8*
24:*22* 31:*14*
**Bates** 22:*2*
**beat** 6:*16* 7:*14*
**Becker** 15:*3*
20:*3* 23:*8*
**begged** 16:*15*
**behalf** 2:*10*
**believe** 5:*12*
6:*18, 21* 12:*19*
16:*4* 17:*19*
30:*5* 33:*7*
**Bible** 19:*5*
28:*19*
**bitch** 7:*7* 19:*13*
30:*6*
**bite** 19:*7*
**black** 8:*24* 9:*3,*
*11* 10:*23* 11:*4,*
*24*
**blessings** 10:*10*
**body** 21:*24*
**bond** 16:*6*
**bonded** 16:*8*

17:*7* 28:*5, 10*
**booked** 16:*12*
**booking** 16:*11*
**break** 21:*14*
**breakfast** 20:*2*
30:*12, 13*
**Bro** 26:*6*
**broke** 15:*23*
16:*7*
**broken** 33:*11, 18*
**brother** 12:*12,*
*15, 18, 20*
**brother's** 12:*21,*
*23*
**brought** 20:*2*
**buffed** 20:*10*
**butt** 31:*1*

**< C >**
**C.S.R** 1:*19* 38:*4*
**call** 12:*24* 13:*1*
**Called** 1:*13* 3:*8*
7:*4, 7* 9:*13*
30:*5* 34:*13*
**camera** 20:*12*
22:*1*
**caption** 4:*1*
**carry** 17:*2*
**case** 4:*1* 11:*16*
31:*22* 35:*23*
**cases** 35:*16*
**catch** 7:*13*
32:*22*
**caught** 6:*15*
**cell** 7:*21* 20:*7*
23:*2*
**CENTRAL** 1:*3*
**certain** 31:*3*
**certify** 38:*5, 15*
**change** 37:*6*
**changes** 37:*6*

**charges** 16:*9*
20:*22, 23* 34:*1*
**Check** 4:*11*
33:*14*
**checks** 11:*7*
**choice** 16:*20*
**choices** 14:*15*
**chose** 14:*16*
**Christian** 13:*14*
**Church** 13:*14*
**Civil** 1:*15*
**claim** 4:*4*
**claims** 31:*24*
34:*5* 35:*4*
**clearly** 14:*1*
**CMT** 18:*13*
26:*20, 21*
**Code** 1:*15*
**come** 37:*3*
**coming** 11:*17*
**comment** 9:*21*
**commentary**
9:*23*
**comments** 10:*13,*
*15* 15:*7, 10*
**commissioned**
1:*21*
**communicate**
19:*22*
**communicated**
32:*12*
**community**
34:*24*
**company** 36:*17*
**Complaint** 3:*24*
4:*14* 34:*8, 11*
**complaints**
34:*17, 23*
**complete** 38:*10*
**computer** 26:*16*
**concrete** 32:*23*

**concussion**
33:*15*
**constitutional**
34:*18*
**contact** 33:*3*
**control** 19:*9*
**controls** 24:*15*
**conversation**
31:*13*
**conversations**
28:*11, 15* 31:*17*
35:*8*
**convey** 11:*23*
**copy** 36:*1, 4, 11,*
*13, 15*
**cordial** 29:*2*
**correct** 3:*21*
4:*5, 6* 6:*3* 7:*22*
9:*17* 10:*13*
14:*22* 15:*20*
30:*1, 2* 34:*2, 3*
38:*10*
**correctional** 5:*3,*
*11* 14:*21, 23*
33:*2*
**Corrections**
32:*11*
**correctly** 35:*23*
**COs** 7:*24*
13:*22* 15:*4*
20:*3* 30:*10*
**counsel** 35:*2*
38:*16*
**Countdown**
18:*17*
**counts** 8:*1*
**COUNTY** 1:*2*
3:*15* 4:*23* 5:*15*
6:*6* 8:*13* 11:*5,*
*14* 16:*10* 17:*18*




21:*2* 28:*17*
32:*13* 38:*2*
**couple** 13:*4*
17:*7* 26:*13*
**COURT** 1:*3, 17*
3:*2* 22:*4* 35:*21,
24*
**covered** 3:*16*
**cracker** 9:*13, 22*
**CSR** 38:*23*
**current** 32:*8*
**currently** 36:*2*
**cuss** 7:*4, 6*
**CV** 4:*2*

**< D >**
**date** 4:*13, 14*
14:*6* 28:*2, 7*
31:*11*
**Davis** 5:*18, 21*
6:*2* 8:*16, 23*
9:*23* 12:*10, 17*
13:*16* 15:*5, 11,
14, 21* 16:*2, 14*
19:*23* 24:*18*
25:*3, 20* 27:*5, 7,
20, 24* 28:*10, 11,
15* 29:*11, 24*
30:*20* 32:*2, 16*
34:*1*
**day** 1:*11* 11:*10*
17:*23* 27:*9*
33:*6* 38:*21*
**days** 20:*16*
21:*12*
**DC** 22:*2*
**deadline** 4:*19*
**deal** 11:*16*
**deals** 4:*10*

**Defendants** 1:*9,
13* 2:*10* 3:*8, 15*
32:*1*
**Department**
32:*10*
**DEPONENT**
37:*11*
**DEPOSITION**
1:*9* 21:*19*
35:*20* 38:*7, 9*
**depositions** 1:*18*
**desk** 11:*10*
**DeWitt** 3:*15*
4:*23* 5:*15* 6:*6*
8:*13* 16:*10*
17:*18* 28:*16*
32:*13*
**diabetic** 11:*9*
**diagnosis** 33:*10*
**directly** 20:*13*
37:*3, 4*
**discipline** 5:*11*
**DISCOVERY**
1:*9, 18* 17:*4, 21*
**discussion** 21:*17*
**DISTRICT** 1:*3*
**document** 22:*3*
**documents** 34:*4*
**door** 6:*11* 8:*2,
3, 5, 7, 19* 30:*11*
**doors** 6:*6, 8*
**downs** 35:*18*
**Dr** 32:*3* 33:*4*
**drafting** 34:*8, 10*
**drugging** 4:*10*
**DU** 38:*2*
**dude** 19:*14*
**duly** 1:*20* 3:*4,
9* 38:*6*
**Dundee** 2:*7*

**< E >**
**earlier** 17:*5*
**early** 7:*19*
**east** 34:*14*
**either** 21:*11*
35:*20*
**employed** 4:*22*
**encountered**
8:*16* 15:*6*
**ended** 11:*17*
12:*9* 16:*5*
**entire** 38:*11*
**entry** 31:*10*
**errata** 36:*3, 13,
22*
**errors** 36:*3, 14*
**et** 1:*8*
**everybody** 11:*10*
**exact** 27:*22*

**EXAMINATION**
3:*11*
**examined** 3:*10*
**Exhibit** 21:*24*

**< F >**
**face** 19:*12*
20:*11* 30:*1, 4*
**face-to-face**
5:*24* 6:*4*
**family** 35:*4*
**fees** 35:*10*
**fell** 32:*21*
**felt** 33:*18*
**Fentanyl** 4:*9*
**fight** 14:*11*
15:*22*
**file** 4:*18*
**filed** 3:*23*

**file-stamped**
4:*17*
**filing** 35:*10*
**fill** 36:*2*
**filling** 34:*7*
**finances** 35:*12*
**first** 3:*9* 5:*5, 21*
6:*2* 7:*15, 18*
13:*14* 28:*9* 38:*6*
**five** 21:*4*
**fixed** 26:*17*
**floor** 19:*12*
**follows** 3:*10*
21:*19*
**footage** 22:*1*
**forced** 31:*14*
**forget** 11:*15*
12:*23* 15:*1* 19:*5*
**forth** 38:*13*
**found** 13:*21*
20:*14*
**four** 17:*14* 35:*6*
**Fourth** 4:*3*
**friends** 35:*3*
**front** 8:*2, 3*
**fucking** 25:*4*
26:*7*
**FURTHER**
37:*11* 38:*15*

**< G >**
**general** 3:*19*
**getting** 4:*9* 19:*2*
**give** 21:*3* 30:*11,
13* 33:*19* 36:*21*
**given** 38:*11*
**GLORIA** 1:*19*
36:*19* 37:*1*
38:*3, 23*
**Gloria's** 36:*17*


TP.One
Court Reporting

Scheduling@TP.One
www.TP.One


EXHIBIT B
800.FOR.DEPO
(800.367.3376)

**go** 3:*18* 5:*14* 8:*2, 3* 9:*4* 11:*6, 9* 12:*14* 14:*15, 16* 16:*19, 20* 23:*20, 23* 30:*22* 31:*15* 37:*4*
**God** 28:*18*
**going** 5:*6* 6:*15* 7:*14* 9:*19* 14:*8, 11, 14* 16:*13, 18* 20:*24* 21:*1, 3, 13, 20, 23* 22:*8, 13* 23:*19* 29:*4* 30:*16, 22* 31:*18* 35:*15*
**gotten** 15:*15*
**governmental** 34:*19*
**grievance** 30:*19, 23* 31:*5* 34:*20*
**grievances** 5:*13* 31:*7*
**ground** 3:*16*
**groups** 35:*1*
**guess** 6:*19* 14:*2*
**guilty** 20:*14*
**guy** 12:*6* 14:*9* 20:*20* 27:*15*
**guys** 19:*17* 21:*3* 26:*12*

**< H >**
**hand** 3:*3* 19:*12* 38:*20*
**handcuffed** 24:*15*
**handles** 5:*14*
**hands** 20:*5*
**hang** 12:*14*
**happen** 30:*8* 35:*17*

**happened** 16:*3* 21:*2*
**head** 16:*23* 32:*21, 23*
**headed** 8:*15*
**hear** 14:*1* 23:*16* 24:*7, 17, 20, 23* 25:*2, 12, 19, 23* 26:*6, 8*
**hearing** 24:*1*
**hearings** 31:*3*
**held** 21:*17*
**hell** 30:*14*
**help** 7:*20*
**hereinabove** 38:*12*
**hereof** 38:*19*
**hereunto** 38:*19*
**hires** 5:*12*
**hit** 30:*14* 32:*23*
**hole** 30:*12*
**honest** 10:*20*
**Hot** 18:*16*
**hotel** 8:*6*
**house** 12:*14* 34:*14*
**housed** 11:*1* 12:*10* 15:*21* 16:*1, 4*
**hung** 12:*11* 13:*3*
**hurt** 32:*20, 24*
**hydrated** 33:*9*

**< I >**
**ice** 33:*8*
**ice-pack** 33:*5*
**idea** 32:*9*
**identify** 9:*10*
**IFMK** 2:*6*

**iHeartRadio** 18:*9*
**IL** 2:*8*
**ILLINOIS** 1:*1, 3, 16, 22* 32:*10* 38:*1, 4*
**incarcerated** 4:*24* 36:*2*
**incident** 32:*5* 33:*23*
**indication** 10:*22*
**individual** 5:*19* 9:*1, 3, 11* 10:*23* 11:*4, 24* 16:*21* 29:*13* 34:*9*
**individuals** 27:*3* 28:*5*
**information** 36:*18, 20*
**injury** 32:*15, 19*
**inmate** 15:*15, 16* 31:*9*
**inmates** 4:*9* 6:*9*
**inside** 22:*24*
**institution** 14:*2*
**insulin** 11:*7*
**interested** 38:*18*
**interview** 22:*11*
**interviewed** 22:*22* 23:*3, 5*
**involvement** 5:*1, 8*
**issues** 19:*18, 22* 24:*1*

**< J >**
**Jail** 4:*23* 5:*2, 6, 7, 9, 15* 6:*6* 8:*13* 11:*14* 13:*12* 16:*10* 17:*18* 21:*3*

27:*18* 28:*17* 32:*13*
**January** 17:*18*
**jaw** 19:*15* 30:*7, 9* 32:*24* 33:*11, 17, 21*
**jobs** 5:*12*
**joint** 8:*6*
**Joshua** 15:*3, 22, 23* 16:*7* 20:*3* 23:*8* 32:*2, 6, 7*
**jumped** 31:*6*
**Justin** 11:*1, 12, 18* 12:*3* 13:*23* 14:*3* 15:*13, 18, 19*

**< K >**
**keep** 18:*23* 27:*11* 36:*4, 15*
**kept** 18:*6*
**kid** 9:*7*
**kind** 8:*6* 9:*14*
**kmoore@ifmkla w.com** 2:*9*
**knew** 9:*8* 12:*16*
**know** 7:*8* 8:*22* 9:*2* 10:*19* 11:*18* 15:*20* 16:*24* 17:*13* 19:*3* 20:*12* 22:*11* 23:*24* 24:*13* 25:*22, 24* 26:*10, 18* 27:*12* 29:*3* 32:*6* 36:*23* 37:*1*
**knowledge** 5:*10*
**known** 11:*20*
**KYLE** 2:*6*

**< L >**





EXHIBIT B

800.FOR.DEPO
(800.367.3376)

**LAW** 2:*6* 4:*8,*
*15* 9:*5, 19*
**lawsuit** 34:*5*
**leaving** 32:*13*
**led** 18:*3*
**library** 4:*8, 15*
9:*5, 19*
**License** 1:*20*
38:*23*
**liked** 28:*19, 21*
**literally** 18:*24*
**little** 9:*7*
**lived** 12:*13*
**located** 13:*8*
**Lochard** 32:*4*
33:*4*
**lockdown** 31:*15*
**locked** 8:*8* 12:*7*
**locks** 13:*23, 24*
**login** 31:*10*
**long** 11:*15*
13:*3* 16:*1* 17:*1*
20:*18* 27:*20*
**look** 14:*9* 18:*22*
**lot** 3:*16* 13:*13*
27:*8* 28:*18*

**< M >**
**mail** 4:*10, 12*
**making** 6:*18*
**man** 18:*22*
19:*6, 9*
**marked** 21:*24*
22:*3*
**mean** 4:*6, 16*
6:*14* 7:*1* 9:*13,
14* 10:*5, 7, 8*
18:*5* 19:*19*
23:*18* 24:*10*
25:*18* 27:*9, 10,*

*11* 29:*1* 33:*19*
**means** 10:*9, 19*
**medical** 32:*4*
33:*3, 20*
**medicine** 33:*8*
**meet** 5:*21*
**members** 35:*4*
**mentioned**
15:*13* 17:*5*
26:*19* 35:*19*
37:*1*
**message** 31:*10*
**met** 3:*13* 5:*23*
6:*2* 13:*7*
**Mike** 34:*13*
**Misty** 4:*1* 5:*4*
19:*23* 23:*8*
34:*17, 23*
**money** 35:*9, 12*
**month** 17:*12*
**months** 16:*5*
17:*8, 9, 10, 12,
15* 34:*14*
**MOORE** 2:*6*
3:*1, 12* 21:*20,
22* 22:*5, 18*
23:*13* 24:*4*
25:*10* 26:*4*
29:*7, 18* 31:*18,
21* 35:*19* 36:*8,
12* 37:*1*
**morning** 3:*14,
17* 18:*13, 16*
26:*23*
**mother** 7:*9*
**mouthing** 24:*18*
**move** 14:*3, 8, 14*
31:*11, 18*
**moved** 13:*15, 19*
14:*18* 17:*6*

20:*7* 23:*1*
30:*19* 31:*12*
**moving** 14:*7*
**Music** 18:*10*
28:*24*
**Muslim** 10:*19*

**< N >**
**name** 12:*22, 23*
13:*6* 34:*12*
**named** 32:*1*
**names** 12:*24*
**nature** 28:*14*
**neck** 31:*4*
**need** 21:*5*
**needed** 35:*9*
**negative** 29:*12*
**neighbor** 34:*13*
**never** 5:*23*
7:*16* 13:*6* 33:*13*
**night** 7:*24*
18:*10*
**non-profits**
34:*24*
**Northbrook** 2:*8*
**nose** 15:*23* 16:*7*
**Notarial** 38:*20*
**Notary** 1:*20* 3:*6*
**note** 37:*5*
**notes** 8:*11*
**notified** 27:*17*
**noting** 36:*3*

**< O >**
**oath** 3:*4*
**occasions** 12:*12*
**October** 5:*24*
6:*1* 7:*19* 11:*14*
13:*17* 17:*6*
**officer** 14:*23*
16:*11*

**officers** 14:*21,
24* 33:*2*
**oh** 18:*19*
**Okay** 6:*1* 8:*15*
10:*21* 17:*5, 23*
19:*16* 21:*13, 15,
16* 22:*12* 23:*10,
20* 24:*2, 5, 17*
25:*2, 7, 11, 16,
19* 26:*1, 5, 19*
28:*3* 30:*16*
31:*18* 35:*19*
36:*9, 24*
**old** 11:*21*
**older** 12:*17*
**opened** 30:*11, 12*
**opinion** 29:*12,
22*
**other's** 27:*1*
**outcome** 38:*18*
**overheard** 13:*22*

**< P >**
**P.M** 1:*12* 21:*21*
**pack** 14:*6* 33:*8*
**PAGE** 38:*2*
**pain** 33:*8*
**paperwork**
31:*16*
**parents** 35:*5, 10*
**Park** 15:*22*
32:*2, 6*
**parking** 13:*13*
**Park's** 15:*23*
16:*7* 32:*7*
**part** 24:*21*
27:*16* 29:*3*
**particularly**
28:*8*
**parties** 38:*17*




pass 8:*11*
passed 16:*24*
pause 22:*13*
23:*24*
Pausing 23:*14*
24:*5* 29:*8, 19*
pay 35:*9* 36:*15*
peace 10:*9, 11,*
*16*
pending 31:*20*
people 8:*14*
11:*8*
person 6:*22*
11:*1*
person's 9:*15*
pertaining 1:*17*
phone 33:*4*
physical 19:*21*
32:*15, 19*
physically 19:*24*
picked 26:*24*
picking 13:*24*
place 16:*18*
17:*24* 18:*1*
38:*12*
Plaintiff 1:*6*
play 22:*9*
23:*20* 25:*20*
played 25:*23*
playing 22:*17*
23:*10, 12* 24:*3*
25:*7, 9* 26:*1, 3,*
*9, 17* 29:*6, 15, 17*
plea 11:*16*
please 3:*1, 3*
14:*12*
plenty 33:*20*
pod 6:*8, 10*
7:*21* 8:*3, 4, 6,*
*17, 18* 9:*1* 12:*1,*
*2, 3, 4* 13:*16*

14:*8, 16, 18*
16:*20* 17:*6*
19:*18* 20:*8, 13*
27:*2, 4, 6, 11, 21*
28:*1, 4, 7, 9*
29:*1* 31:*15* 32:*3*
pods 6:*6* 7:*23*
9:*6*
point 30:*18*
pointed 20:*13*
position 29:*13*
possess 34:*4*
posting 16:*5*
potentially 35:*17*
prescribed 33:*5,*
*22*
PRESENT 2:*1*
press 20:*22, 23*
33:*24*
pretty 20:*11*
previous 34:*10*
35:*20*
previously
15:*14* 22:*1*
prior 17:*18*
prison 11:*17*
21:*1, 4* 36:*1*
pro 2:*4*
probably 7:*7*
problem 20:*17*
21:*8* 27:*17*
problems 6:*23*
20:*20*
Procedure 1:*15*
34:*21*
proceeds 31:*22*
produced 22:*1*
provide 36:*18,*
*19*
provided 34:*6*

provider 33:*3*
provisions 1:*14*
provoke 6:*24*
Public 1:*20*
punched 19:*14*
20:*10* 30:*6, 9*
32:*21*
purpose 1:*18*
10:*3*
pursuant 1:*14*
pushed 19:*11*
29:*24*
pushing 30:*4*
put 9:*20* 14:*10,*
*12* 16:*13, 15, 18*
20:*5, 6*

< Q >
qualified 1:*21*
question 31:*20*
questions 22:*9,*
*10*
quite 10:*8*
quoted 19:*4*

< R >
racist 9:*22*
Raise 3:*2*
rarely 28:*13*
real 12:*24*
really 5:*23* 8:*9*
17:*1, 20* 18:*4*
23:*17* 25:*15*
reason 13:*18, 21*
rec 9:*5, 19*
recall 15:*10*
17:*20* 22:*11, 22*
26:*15* 27:*22*
28:*1* 34:*12*
record 21:*15, 18,*

*20*
recorded 38:*8*
records 17:*3*
33:*20*
reduced 38:*8*
refused 31:*4*
33:*19*
reiterate 3:*18*
related 34:*4*
38:*16*
religion 28:*19*
religious 10:*3*
remember 13:*2*
REPORTER
3:*2* 22:*4* 35:*22,*
*24*
reports 17:*22*
represent 3:*15*
requesting
30:*19* 35:*2*
reserve 35:*23*
36:*5, 7, 9*
reserved 38:*14*
residence 13:*8*
response 10:*17*
rested 33:*9*
result 32:*16*
resumed 21:*19*
returned 28:*16*
review 36:*1*
37:*5*
right 3:*3* 6:*7*
13:*10, 11, 13*
19:*14* 22:*13*
23:*14* 26:*22*
29:*8, 19* 30:*10*
Road 2:*7* 13:*12*
rooms 8:*6*
rotate 18:*13*
Rules 1:*16*
3:*17* 8:*14*

TP.One
Court Reporting
Scheduling@TP.One
www.TP.One
EXHIBIT B
800.HER.DEPO
(800.367.3376)



running 23:*18*
24:*8, 12, 24*
25:*14*

< S >
safety 14:*2*
SAITH 37:*11*
sane 27:*12*
sarcastically
9:*24*
saw 26:*12* 33:*7*
saying 24:*10, 21,*
*22, 23* 27:*13*
31:*14*
schedule 18:*14*
school 11:*22*
screen 22:*20*
30:*17*
scripture 19:*4*
SCROGGIN
1:*8* 3:*24* 4:*2,*
*21* 15:*1* 16:*11*
20:*3* 23:*7*
31:*10* 34:*17, 23*
Scroggin's 14:*5*
se 2:*4*
Seal 38:*20*
second 22:*9*
seconds 22:*16*
23:*15* 24:*6*
security 5:*3*
see 8:*20* 9:*6, 18*
11:*6, 11* 22:*6*
23:*21* 26:*11, 14*
33:*15* 36:*14, 20*
seeing 9:*17*
seen 34:*15*
Seg 14:*15*
16:*19* 20:*16, 19*
21:*12* 30:*23*

segregation
21:*10*
send 37:*2*
sent 4:*15* 26:*12*
35:*12*
separate 6:*8*
separated 20:*6*
23:*2*
separates 8:*5, 7*
serious 21:*7*
25:*13*
set 38:*13, 20*
Shalom 10:*18*
sharing 30:*16*
sheet 36:*3, 13,*
*22*
shift 31:*9*
shit 18:*20*
shorthand 38:*8*
show 21:*23*
33:*21*
shows 26:*23*
27:*1* 28:*20*
Shut 25:*3* 26:*7*
30:*12*
signature 35:*21*
38:*13*
SIOLIDIS 1:*19*
38:*3, 23*
sir 3:*22* 6:*4*
10:*14* 13:*2*
14:*19* 15:*12*
17:*9, 20* 22:*7,*
*21, 24* 23:*17*
24:*8* 25:*15, 22,*
*24* 28:*2* 29:*14*
30:*2* 32:*9, 14,*
*18, 24* 34:*9, 20,*
*21*
sister 12:*13*

13:*5*
sister's 12:*14*
sit 15:*9*
sitting 19:*1*
slow 23:*18*
24:*8, 9, 12, 24*
25:*14* 26:*9, 17*
Smith 11:*2, 12,*
*19* 12:*3* 13:*23*
14:*4* 15:*13, 18,*
*19*
somebody 11:*13*
sons 35:*6, 14*
soon 20:*1*
sounds 18:*20*
29:*10*
speaking 10:*23*
speed 24:*9, 12,*
*24* 25:*14*
spend 21:*9*
spent 21:*11*
spoke 23:*7, 8*
34:*11*
sports 28:*23*
sprained 33:*11*
SS 1:*1* 38:*1*
staff 5:*11* 27:*18*
stamped 22:*15*
started 5:*5*
18:*17*
STATE 1:*1, 15,*
*21* 25:*12* 38:*1, 4*
stated 15:*14*
31:*12*
statement 10:*4*
statements 29:*23*
STATES 1:*3*
stating 24:*18*
status 35:*15*
stay 33:*9*

stayed 11:*15*
stood 30:*5*
stop 30:*16*
Stopping 25:*11*
26:*5*
street 13:*10, 12*
streets 9:*8*
17:*14*
strike 30:*3*
31:*19* 32:*7*
stripping 8:*10*
stuff 6:*17* 9:*5*
12:*11* 14:*6*
28:*21, 22*
stupid 6:*17*
10:*6* 18:*5*
subject 35:*7*
submit 30:*18*
34:*16, 22*
substance 37:*7*
suffer 32:*15, 19*
sugar 11:*7*
suit 31:*2* 38:*17*
Suite 2:*7*
super 26:*9*
support 31:*24*
supposed 8:*12*
Supreme 1:*16*
sure 10:*9* 20:*11*
Swear 3:*1*
swelling 33:*21*
swift 18:*6, 7, 18*
19:*17* 24:*19*
29:*23*
swollen 33:*1*
sworn 3:*9, 20*
38:*6*

< T >
table 24:*16*





EXHIBIT B

take 17:24 21:13

taken 35:22

talk 6:9 8:8 18:4 28:18 35:3, 15

talked 20:8 27:8, 9 28:23, 24

talking 12:11 13:23 18:11, 17, 23 28:21

Taylor 18:6, 7, 18 19:17 24:19 29:23

tell 3:20 15:4

ten 23:15

testified 3:10

testify 31:24 32:4 38:6

testimony 31:19 38:11

tests 11:8

Thank 5:17

thereof 1:17 38:18

thing 4:7 10:6

things 7:1, 3 31:8 33:22

think 10:9 13:20 15:2 20:18 21:11 25:5 33:6

THOMAS 1:5, 11 2:3 3:7 4:1 38:5

threat 7:15, 18 8:23

threaten 7:11

threatened 6:14 7:10, 16, 17

threatening 10:12, 15 15:7, 10

threats 9:12

three 4:13 17:15 20:16, 21 26:14 34:14

throat 31:6

tie 31:1, 4

time 4:7, 13 6:2 13:7, 20 16:6 20:24 21:9 22:15 24:7 25:21 27:4, 6, 8, 23 28:9 38:12

times 11:10 13:4 17:16 20:21

tits 18:21

today 15:9

told 7:13 11:2, 4 12:5, 7, 8, 13 14:6, 9, 13 15:17 16:13 18:7, 8, 21 19:8 20:2, 15 25:3 27:14 30:14, 21 31:8 35:10, 11

tongue 19:7, 10

top 16:23

total 26:14

TP 36:17 37:3

transcript 36:16, 21 37:4 38:10

trash 18:11, 23

trays 20:2

treatment 32:5

trial 31:3, 23

tried 27:11

trouble 21:7

true 38:10

trust 35:21

truth 3:21 38:7

try 32:22

turn 23:21, 22

TV 18:13 27:2

two 7:5 9:20 16:5 17:9, 10, 12, 15 27:10 29:1 35:16

two-year 4:18

typewriting 38:9

typo 36:3 37:5

< U >

understand 4:16, 20 7:20

understanding 29:21

UNITED 1:3

ups 35:17

upset 14:17, 20 29:11

< V >

Vaughn 4:1 5:4 19:23 23:9 34:18, 24

verbal 5:22 6:5, 10, 12, 20

versus 4:2

video 22:6, 15, 17 23:4, 10, 12, 14 24:1, 3, 18 25:8, 9, 11, 13 26:1, 3, 11, 12, 15, 20 29:4, 6, 8, 10, 15, 17, 19

videos 26:13, 14

violations 34:18

violent 6:21

voice 9:14, 15

volume 23:21, 22

vs 1:7

< W >

waive 35:21

walk 17:1

walking 7:21 16:24

walk-throughs 7:24

wall 10:24

want 18:4 20:15, 23 21:6 33:24

wanted 14:3 20:22 31:2

watch 18:14, 15, 16 20:7 23:1

watched 26:15, 22, 24 27:1

watching 26:21 28:20

way 38:16, 18

ways 19:7

wear 31:1, 2, 4

weather 8:9

weeks 4:13 17:15 32:20, 24

Well 8:22 9:18 11:3 15:3, 18, 23 16:3 17:13 26:16 27:18 32:24 33:9 35:9 36:20

went 11:21

we're 14:10





EXHIBIT B

800.FOR.DEPO
(800.367.3376)

16:*18*  21:*13*
**white**  9:*15*
**witness**  1:*13*
 3:*5, 8*  36:*6, 10,*
*24*  38:*12, 14, 19*
**witnessed**  15:*24*
*32:2*
**witnesses**  31:*23*
**word**  7:*4, 6*
**working**  15:*2, 3*
**world**  18:*9*  19:*1*
**wrestling**  28:*20*
**wrist**  32:*20, 22*
 33:*11*
**write**  31:*7*
**written**  30:*19*
*34:16, 22*
**wrong**  19:*7*
**wrote**  4:*14*
*30:24*  31:*5*
**WWE**  28:*20*

**< X >**
**X-ray**  33:*13, 14,*
*17, 19*

**< Y >**
**yeah**  19:*20*
 25:*5, 6*  27:*9, 10*
**years**  11:*21*
 21:*4*
**younger**  12:*17,*
*19*

**< Z >**
**ZOOM**  1:*9*




Notice Date: Wednesday, 7. May 2025


Attention: Thomas Atchison




Re:Thomas Atchison v. Scroggin
   Deposition of Thomas Atchison (4/24/2025)


        NOTICE REGARDING SIGNING DEPOSITION TRANSCRIPT

The above referenced transcript is available for review.
Within 30 days, or the applicable timeframe of your legal
jurisdiction, the witness may read the testimony to verify
its accuracy. Any changes can be noted on the following
errata page.

Once the transcript has been reviewed, the witness should
sign and date the certificate of deponent page. The signed
certificate, errata, and original transcript (if provided)
must be returned to TP.One per the rules of civil procedure.

If the transcript and errata are not returned within the
allotted time, the unsigned transcript may be used as if
signed by the witness.


Thank you,

TP.One Production Department
Production@tp.one





Deponent Errata Page

Notice Date: 05/07/2025

Deposition Date: 4/24/2025

Deponent: Thomas Atchison

Case Name: Thomas Atchison v. Scroggin

| Page:Line | Now Reads | Should Read |
|---|---|---|
| p4: L8 | Auburndale | Menard |
| p4: L10 | drugging deals | drugging COs |
| p10: L1 | Alaikum | Alaikum Salam |
| p10: L18 | Shalom | Salam |
| p12: L13 | I told | he told |
| p16: L24 | I passed out walking over there | I'm hand cuffed walking over here |
| p18: L23 | angle | angel |
| p20: L10 | buffed | muffed |
| p30: L12 | Shut hole | chuck hole |
| p30: L22 | be in that | be in there |
| p31: L2 | They wanted | They allowed |

TP.One
Court Reporting

Scheduling@TP.One
www.TP.One

EXHIBIT B

800.FOR.DEPO
(800.367.3376)



CERTIFICATE OF DEPONENT

I hereby certify that I have read and examined the foregoing transcript, and the same is a true and accurate record of the testimony given by me. Any additions or corrections that I feel are necessary, I will attach on a separate sheet of paper to the original transcript.

_____

Signature of Deponent

I hereby certify that the individual representing himself/herself to be the above-named individual, appeared before me this _20_ day of _May_, 20__25__, and executed the above certificate in my presence.

_____

NOTARY PUBLIC IN AND FOR



OFFICIAL SEAL
JOSEPH REUEL ALLISON
Notary Public, State of Illinois
Commission No. 989938
My Commission Expires
April 26, 2028

_Randolph_
County Name

MY COMMISSION EXPIRES: _April 26, 2028_

TP.One
Court Reporting

Scheduling@TP.One
www.TP.One

**EXHIBIT B**

...DEPO
(800.367.3376)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

THOMAS ATCHISON,                      )
                                      )
            Plaintiff,                )
                                      )
      v.                              )        Case No. 2023-cv-3190-MMM
                                      )
ANDREW SCROGGIN, et. al.,             )
                                      )
            Defendants.               )

**DEFENDANTS' RULE 56 MOTION FOR SUMMARY JUDGMENT**
**AND SUPPORTING MEMORANDUM OF LAW**

# Exhibit C
# CO Body Camera Footage
# Andrew Scroggin's Post-Incident Interviews